## Scanlon *v.* Philadelphia Rapid Transit Company, Appellant.

*Negligence—Street railways—Alighting from car—Contributory negligence.*

In an action by a woman against a street railway company to recover damages for personal injuries, it appeared that plaintiff was riding in an open summer car, having a running board along its side. Plaintiff wished to get off at a certain street and while yet some distance from it, she spoke to the conductor and told him so. Whether or not he heard her, was not shown; but he saw her signal, and shortly afterwards stopped the car. This was at a point some distance from the street where plaintiff desired to alight. When the car stopped she stood up and looked at the conductor, and he looked at her. Neither of them spoke, but plaintiff stated that she thought she ought to get off, because the conductor seemed to be waiting for her to do so. Although she knew that the car had not yet reached the street at which she desired to alight, she stepped down on the running board, and attempted to step off backwards from there to the ground. The track was laid at that point near the side of the road which sloped considerably towards the gutter. She found the distance too great for her to touch the ground comfortably with her foot, immediately under the running board, and whether from confusion, or inability to control herself, the result was that she fell. Whether or not she could have safely alighted by stepping across the gutter to the footwalk did not appear. She testified that she did not look right down at the ground as she stepped off. She said, " I looked over and saw the path, and I thought it was all right." The accident happened in the early afternoon of a summer day. The car stood perfectly still while plaintiff was alighting, and when she fell, the conductor who was on the rear platform at once stepped down and helped her up. There was no dispute about the facts. *Held,* that the case was for the court, and that it was error to submit the case to the jury.

Argued Jan. 15, 1904. Appeal, No. 153, Jan. T., 1903, by defendant, from judgment of C. P. No. 4, Phila. Co., June T., 1902, No. 4125, on verdict for plaintiff in case of Elizabeth Scanlon v. Philadelphia Rapid Transit Company. Before MITCHELL, C. J., DEAN, FELL, BROWN, MESTREZAT, POTTER and THOMPSON, JJ. Reversed.

Trespass to recover damages for personal injuries. Before WILLSON, P. J.

The facts are stated in the opinion of the Supreme Court.

Verdict and judgment for plaintiff for $2,500. Defendant appealed.

*Error assigned* was in refusing binding instructions for defendant.

*Thomas Leaming*, with him *Sydney Young*, for appellant.— There was no evidence of negligence: Keator v. Scranton Traction Co., 191 Pa. 102.

The plaintiff was guilty of contributory negligence: Keator v. Scranton Traction Co., 191 Pa. 102; Buzby v. Phila. Traction Co., 126 Pa. 559; Sellers v. Union Traction Co., 21 Pa. Superior Ct. 5.

*Frank G. Perrin*, with him *William Clement Lees*, for appellee.

OPINION BY MR. JUSTICE POTTER, February 29, 1904:

In the early afternoon of a summer day, the plaintiff was riding out the Old York road, upon a car of the defendant company. It was an open car, having a running board extending along the side by means of which the passengers stepped on and off. The plaintiff was seated near the right side, with one passenger between her and the end of the seat, which ran crosswise of the car. She wished to get off at Rockland street, and while yet some distance from it, she spoke to the conductor and told him so. Whether or not he heard her, was not shown. But he evidently saw her signal, and shortly afterwards the car was brought to a standstill. It was then a considerable distance from Rockland street, and as the plaintiff says was near the entrance to the Graham hothouses. When the car stopped she stood up and looked at the conductor, and he looked at her. Neither of them spoke, but the plaintiff says that she thought she ought to get off, because the conductor seemed to be waiting for her to do so, although she knew the car had not yet reached Rockland street. She then stepped down on the running board, and attempted to step off backwards from there to the ground. The track was laid at that point near the side of the road, which sloped considerably towards the gutter. She found the distance too great for her to touch the ground com-

fortably with her foot, immediately under the running board, and whether from confusion, or inability to control herself, the result was that she fell. Whether or not she could have safely alighted by stepping across the gutter to the footwalk does not appear. But she does say that she did not look right down at the ground as she stepped off. She says, " I looked over and saw the path, and I thought it was all right."

The car stopped perfectly still during the time, and when she fell, the conductor, who was on the rear platform, at once stepped down, and helped her up.

There was no dispute as to the facts. At the close of the testimony, counsel for the defendant asked for binding instructions in its favor, alleging that there was no evidence of negligence, and even if there was, the plaintiff was guilty of contributory negligence. The trial court refused the instructions and left the whole case to the jury. His refusal of the request for binding instructions is here assigned as error.

The question as to whether or not the evidence tends to prove negligence in any case, is always for the court. Upon it rests the responsibility of determining whether, under all the evidence, reasonably viewed, the jury may properly find the fact of negligence to exist. The problem may be difficult but it is not upon that account any less the duty of the court to solve it. It is the function of the court to determine the limits within which the evidence must come, in order that the conclusion of negligence may be permissible. Giving to the plaintiff the right to the most favorable view of the facts that may reasonably be taken of them, the court should upon proper request being made, declare whether or not, under the submitted testimony, the conclusion of negligence can be reached by the jury.

In the present case, we are unable to agree with the view taken by the trial judge. Our examination of the testimony impels us to the conclusion that the question involved was one for the court, and not for the jury.

The car was running upon the public highway, over which it must be remembered, the defendant company has no control. In laying its tracks, it must conform to the established grade. It can neither construct nor alter any of the places at which passengers are to step on or off its cars. It is obliged to place its tracks and run its cars where the public authorities direct.

The contour of the surface of the street, and the sides and gutters are all fixed by the municipal authorities. Passengers leaving the cars must step upon the surface of the street in the condition in which it is placed by the city which fixes and maintains the grades. Obviously, the rules which might well and reasonably apply to steam railroads owning their own right of way and having complete control of the approaches thereto, cannot reasonably be applied to street railways which have not the right of eminent domain, and are only allowed the use of the public highways in common with other vehicles.

It may be that in this case the conductor misunderstood the signal of the plaintiff, and stopped the car sooner than she wished; but if so, she had only to signify that fact and retain her seat and be carried to the desired spot. She was under no compulsion nor did she receive even a suggestion from the conductor as to where she should get off. That was a matter solely for herself. But the stopping of the car had nothing whatever to do with the cause of the accident; that resulted entirely from the manner in which she left the car. The fact that the street sloped off at the side upon a descending grade to the gutter, necessitated a very long step for any passenger attempting to get off in that vicinity. But this fact was perfectly obvious to the plaintiff, if she used her eyes, which she was certainly bound to do. She was leaving the car in broad daylight and she was apparently able-bodied and in the full possession of her faculties, and there was no reason for the conductor to interfere with her desire to leave the car at that particular time and place. Had she been misled or misdirected by him in any way, or had darkness prevailed so that she could not see where she was going, the case would have been stronger; but under the circumstances, whatever difficulty existed in stepping from the running board to the ground, while the car was standing still, was open and apparent to her. She had only to look directly to the ground beneath and in front of her when she stood upon the running board, before stepping from it. The situation was entirely open to her view, and if she had apprehended any danger whatever from the attempt to step down upon that side, and felt the necessity of leaving the car at that point, it would have been an easy matter for her to step to the other side of the car, and request

the conductor to remove the chain, or pass out underneath it. Presumably she saw exactly where she was to step. There was no occasion for her to take the step unless she thought it perfectly safe for her to do so. No confusion prevailed; the occasion called for no haste; the car was standing perfectly still, and so remained until after she left it. It is true that the highest courtesy upon the part of the conductor would have impelled him to step off the car and assist a lady to alight who desired to leave the car at a point which involved the taking of an unusually long step; but we cannot say that he was under any legal obligation to do so. We know of no rule which requires the conductor of a street car to supervise every motion of a passenger stepping from a stationary car to the ground. We think he may assume that under such circumstances, in broad daylight, with everything open to view, the passenger, even though a woman, may be allowed to judge for herself the distance she can safely step. The court which tried this case below, tried the case of Bland v. Roxborough, etc., Railway Co., 13 Pa. Superior Ct. 93, in which the facts were very much like those now under consideration, although making more strongly against the defendant. The court there directed the jury to find a verdict for the defendant, and the judgment was affirmed in an opinion by the Superior Court. The ruling in that case is in its principle controlling of the present one, and should have been followed.

The defendant here was entitled to the binding instructions for which it asked, and the judgment is reversed.