## MUSKOGEE ELECTRIC TRACTION CO. v. LATTY.

No. 9504—Opinion Filed Jan. 6, 1920.

Rehearing Denied Feb. 17, 1920.

(Syllabus by the Court.)

1. **Carriers—Interurban Roads — Stopping Places—Cars—Presumption.**

Persons embarking on or alighting from an interurban electric car upon an invitation, expressed or implied, of the company's agents in charge of such car, are justified in acting upon the assumption that the company has taken proper precautions to insure their safety. One of such precautions is to avoid stopping its cars at places where it is not safe for passengers to embark or alight. The stopping of a car at a place where people are standing awaiting to get on board is an implied invitation to such persons to take passage on the car if they so desire.

2. **Same—Injury to Embarking Passenger— Proximate Cause—Question for Jury.**

Although the defendant company in operating its interurban cars, which, for the accommodation of passengers stopped at a highway crossing, which had become the custom of the company, was not required to provide a passenger platform at such crossings, it was required to exercise reasonable care to enable passengers to alight or embark with as little danger as practicable; and where a car stopped at such highway crossing, and a passenger was invited to embark at a place more hazardous than that at which the car might conveniently have stopped, the company was negligent; and where, under such circumstances, the plaintiff, in attempting to board the car, was injured, the questions as to whether or not such injuries were proximately caused by the defendant company's negligence in stopping the car at a more hazardous place than that at which the car might conveniently have been stopped, or whether or not such injuries were proximately caused by the plaintiff's contributory negligence in boarding the car, were the questions of fact to be submitted to the jury under appropriate instructions of the court, and the court's refusal of the request of the defendant for a peremptory instruction to find for the defendant was properly refused.

3. **Same—Verdict—Sufficiency of Evidence.**
Record examined, and it is held in the in-

stant case that there was evidence reasonably tending to support the verdict of the jury, and that the trial court did not err in overruling the defendant's motion for a new trial.

Error from District Court, Muskogee County; R. P. de Graffenried, Judge.

Action by Martha Latty against the Muskogee Electric Traction Company. From judgment for plaintiff, defendant brings error. Affirmed.

B. B. Blakeney and J. H. Maxey, for plaintiff in error.

Myron White and R. L. Disney, for defendant in error.

JOHNSON, J. This was an action for personal injury commenced in the district court of Muskogee county, by the defendant in error against the plaintiff in error. The parties will be referred to herein as they appeared in the court below.

The plaintiff sued to recover $5,000. The cause was tried to a jury, who returned a verdict in favor of the plaintiff for $1,000, upon which the trial court rendered judgment, to reverse which this proceeding in error was regularly commenced.

The defendant's assignments of error are: (1) The court erred in overruling motion for a new trial; (2) verdict and judgment are not sustained by sufficient evidence; (3) verdict and judgment are contrary to law; (4) court erred in refusing to sustain demurrer to plaintiff's evidence; (5) erred in refusing to direct the jury to return verdict for the defendant.

In the plaintiff's amended petition the act of negligence charged against the defendant is as follows:

"Plaintiff further states that on the 28th day of October, 1913, she and other parties with her went to the point heretofore mentioned, which point is the intersection of the public highway or the section line road and said electric line of railway, for the purpose of boarding the car operated thereon by the defendant company, and that plaintiff stopped upon the graded roadway of said public road, at which point was the customary and usual stopping of cars on said line for the purpose of taking and discharging passengers, and upon the arrival of said car going toward Hyde Park on said line, said car failed to stop upon the graded roadway, but went over said usual stopping place and through the careless and negligent operation of said car by defendant's agents and employes, said car was stopped at a point east of the graded roadway, so that this plaintiff was compelled to leave the graded roadway and walk down into a ditch or depression along the graded roadway or right of way, along the track of defendant, and by reason of said careless and negligent operation of said car, as aforesaid, this plaintiff was compelled to board said car from said ditch or depression, and said car was stopped in a position so that the lower step of the car was a distance of two or three feet from the ground, and the plaintiff, in attempting to board the same, had great difficulty in climbing upon the lower step of the car by reason of the height of the same from the ground; and that in climbing upon said step this plaintiff took hold of the hand rail and placed her left knee upon the lower step, and in attempting to put her right foot upon the said step her right foot slipped from the said step, and the lower part of her right leg struck the edge thereon, and severely and dangerously fractured and bruised the bone and the tissues surrounding the same, below the knee, and by reason thereof this plaintiff was confined to her bed for a period of six months, and was unable to perform her usual duties for a period of 18 months from said accident and injuries so sustained, and plaintiff has suffered great physical pain and mental anguish by reason of the injuries so received by her as aforesaid, and that she has been permanently crippled, disfigured, and disabled by reason of said injuries, and has been put to a great expense in trying to be cured of said injuries, and compelled to expend approximately $100 for help and assistance in her household duties by reason of said injuries, during the 18 months immediately following said injuries so received.

"Plaintiff further states that the graded roadway at the intersection of the public highway and said street railway crossing was the usual and customary place for said street cars to stop for the purpose of receiving and discharging passengers, and that said defendant company did usually and customarily stop at said point and receive, take on, and discharge passengers, and that the distance from said road grade to the lower step of the street cars of said defendant company at the point of said crossing was approximately 11 inches, making said road crossing a reasonably safe, suitable, and convenient place for receiving and discharging passengers by defendant company's street cars; whereas the point at which said street car actually stopped to receive plaintiff as a passenger at the time plaintiff sustained said injuries was a distance of about three or four feet from and beyond the said graded roadway and from said safe and suitable place for the receiving and discharging of passengers, and was directly over and above a ditch or depression by the side of defendant's roadbed, making the distance from the lower step of the street car to the ground in said depression or ditch approximately three feet, and that by reason of the position of said car steps over said ditch or depression at the time said car stopped to receive this plaintiff it was necessary for the plaintiff to go into said ditch or depression; and that said injuries were received without any negligence or fault whatsoever on the part of this plaintiff, but solely through and by reason of the carelessness and neg-

ligence of the defendant street car company and its employes in passing by and beyond said safe and usual and customary place of stopping said street cars, and in stopping said street car to take on the plaintiff at said point above said ditch or depression, an unusual place of receiving and discharging passengers, which said point where said car was so stopped through the negligence of defendant, its agents and employes, was an unsafe, unsuitable, unusual, and dangerous place to receive or discharge passengers.

The defendant's answer consisted of a general denial and the defense of contributory negligence, to which answer the plaintiff filed a reply consisting of a general denial. There was no material conflict in the evidence, which was, in substance: That on the day of the alleged injury, the plaintiff, in company with her mother, her son, who was a young man about grown, her sister and two small children of her sister, and a lady friend, a Mrs. Ledbetter, boarded one of the defendant's cars for the purpose of visiting the city cemetery, which was located outside the city limits, and on said car reaching a public highway or section line, at a point about 400 yards from the cemetery, it stopped and the parties so named left said car and proceeded to the cemetery; and that some two or three hours thereafter they returned to the point where they left the car for the purpose of returning to the city; that while waiting for the car they stood upon the graded portion of the highway by the side of the defendant's track, and when the car approached the highway, and without any signal from any of the persons named, it slowed up and crossed the highway, and came to a stop with the rear steps thereof from three to five feet beyond the graded portion of the highway where the plaintiff and her companions were standing, all of whom followed up the car and boarded the same; and that in attempting to board the car the plaintiff was injured in the way and manner alleged in her petition.

The testimony showed that the distance from the lower step of the car to the ground where the car stopped was considerably greater than it would have been had the car stopped upon the graded highway, where the plaintiff and her companions were standing, the difference in the distance being from six to eight inches.

It was not disputed that the plaintiff continued to suffer pain from the time of the injury to the time of the trial; that she was under the constant care of a physician for 18 months after receiving the injury; that as a result of the injury necrosis of the tibia or shin bone followed, and that about one-fourth of the front part of the bone sloughed away, leaving the same greatly weakened, more susceptible to being broken, and that such condition was permanent; that the plaintiff was unable to attend to her business, that of conducting a boarding house, for a period of from four to six months, on account of which she was compelled to employ additional help.

While the defendant's assignments of error are numerous, as hereinbefore set out, it relies for a reversal principally upon two grounds which may be stated as: (1) There was no primary negligence on the part of the defendant, charged or shown by the plaintiff; (2) that the trial court failed to properly submit to the jury the defendant's defense of contributory negligence on the part of the plaintiff. We will notice these propositions in the order named.

Counsel for the defendant discuss the first proposition in their brief under the following sub-heads: (a) Defendant was not required under the law to furnish this plaintiff a safe place to board the car at the point where they attempted to board the same; (b) stopping the car at the place where the plaintiff claims it was stopped under the admitted facts did not constitute negligence: (c) that if stopping the car at this point was a negligent act, it, as a matter of law, was not the proximate cause of the injury; (d) the injury of the plaintiff, if any, was caused by mere accident. for which she cannot recover a judgment in damages. And counsel say in support of the contention of the defendant:

"This is a place over which the county has exclusive jurisdiction and in which the defendant could not, except under special arrangement with the county authorities, build and maintain a platform; that there is a marked distinction between the duty of a steam railway and the duty of a street railway to furnish the intending passenger with a safe place to board its cars"

—and cites in support of the contention, Thompson on Negligence, sec. 2712, which is as follows:

"The duty of a common carrier of passengers to provide a reasonably safe place for receiving and discharging his passengers, can have but a qualified application to street railways, where the passengers are usually taken up and discharged upon the surface of the streets. Such a company, is not, for instance, answerable in damages on the footing of negligence, because its motorman stopped the car at a place where the pavement of the street was partially torn up for repairs, without informing the passenger of its condition, and warning him to be cautious in alighting from the car, where its condition was plainly apparent."

Counsel for the defendant next cite in their

brief as supporting their contention, an excerpt from the opinion of the court in the case of Flack v. Nassau E. R. Co., 58 N. Y. Sup. 839, which is as follows:

"Counsel for the defendant expressly excepted to the instruction that it was the duty of the defendant to provide a reasonably safe place for the plaintiff to alight on. As a general proposition, I do not understand it to be the law that a street railway company, whose car is brought to a standstill at the instance of a passenger, not at any terminal point or at a stopping place regularly designated as such by the management of the road, is bound, in the discharge of its duties as a common carrier, to furnish to the passenger a safe place at which to alight. The passenger, under such circumstances, chooses the place for himself, and unless there is evidence that its dangerous character was known to the persons operating the car, and that they allowed him to alight without giving him any caution, the railroad company is, ordinarily, not responsible for the unsafe condition of any part of the street, except that which constitutes a part of its roadbed, which it is legally obligated to keep in repair."

While doubtless counsel did not so intend, yet the foregoing is very misleading, as the court in that case did not adopt the doctrine announced in the quotation above, but the court was merely stating the contention of counsel in that case, and such contention was overruled by the court, as clearly appears from the conclusion reached in the opinion, which was as follows.

"I am inclined to think, therefore, that the instruction of the court to which this exception relates would have to be regarded as too broad, if we took the same view of it as does the learned counsel for the appellant, and considered it as though it stood alone, separate and apart from the rest of the charge. It must be remembered, however, that the court had distinctly impressed upon the minds of the jury the proposition that they could not find a verdict in favor of the plaintiff, unless the accident occurred in consequence of the dangerous condition of that portion of defendant's roadbed upon which the plaintiff stepped. As to this part of the street, it was a place which the defendant was bound to exercise reasonable care to keep safe for the use of passengers invited or permitted to alight upon it, so that, when all portions of the charge which relate to this subject are construed together, we find that the jury were merely instructed that, if the defendant provided any part of its roadbed as a place for passengers to alight on, it was bound to exercise reasonable care to keep that particular place safe for the purpose. In this instruction there was certainly no error. Although the accident occurred in daylight, the conditions of danger were not obvious so as to charge the plaintiff with contributory negligence as a matter of law, and that question was properly

left to the jury. In both aspects of the case, I think the judgment should be affirmed."

Counsel next cite in support of their contention the case of Biglow v. West End St. Ry. Co., (Mass.) 37 N. E. 367, quoting the following except:

"Employes on a street car have a right to assume that a passenger, in alighting from the same in broad daylight, will notice an excavation in the street, caused by the removal of paving blocks, and the company is not chargeable with negligence because they stopped the car near the excavation, or because they failed to caution the passenger as to the condition of the street."

Also, an excerpt from the opinion of the court in the case of Scanlon v. Philadelphia R. Co., (Pa.) 57 Atl. 521, which is as follows:

"Giving to the plaintiff the right to the most favorable view of the facts that may reasonably be taken of them, the court should upon proper request being made, declare whether or not, under the submitted testimony, the conclusions of negligence can be reached by the jury. In the present case we are unable to agree with the view taken by the trial judge. Our examination of the testimony impels us to conclusion that the question involved was one for the court, and not for the jury."

The Supreme Court of Iowa, in the case of McGovern v. Interburban Ry. Co., 111 N. W. 412, had under consideration the precise question involved in the instant case, where the facts were very similar, and the court in the course of the opinion said:

"The request of the defendant that the jury be instructed to return a verdict in its favor, on the ground that there was no evidence of negligence, was properly overruled. While it was not the duty of the defendant operating a car which, for the accommodation of passengers was stopped at any highway crossing where they desired to alight, to provide a passenger platform at each of such crossings, it was its duty to exercise at least reasonable care to enable plaintiff to alight with as little danger as practicable, and if the car was stopped, and plaintiff invited to alight at a place more hazardous than that at which the car might conveniently have been stopped, then the defendant was negligent. The question was properly for the jury. Richmond City R. Co. v. Scott, 86 Va. 902, 11 S. E. 404; Cartwright v. Railway Co., 52 Mich. 606, 18 N. W. 380. 50 Am. Rep. 274; Bullard v. Boston & M. R. Co., 64 N. H. 27, 5 Atl. 838, 10 Am. St. Rep. 367. The cases relied upon for appellant are those in which it is held that a street car company is not liable to a passenger alighting from the car for injuries received after alighting. due to defects in the highway. See, for example. Bigelow v. West End St. Ry. Co., 37 N. E. 367. 161 Mass. 393; Scanlon v. Phila. Rapid

Transit Co., 208 Pa. 195, 57 Atl. 521; Conway v. Lewiston, etc., Horse R. Co., 87 Me. 283, 38 Atl. 110. In the case last cited it is said: 'It should also be remembered that the defendant's cars were drawn by horses, and operated without regular stations or established places for passengers to get on or off the cars. They were not run from station to station only, but upon signal or request, stopped as near the point desired as practicable either to take on or to discharge passengers. It was undoubtedly the duty of the conductor to exercise all reasonable care, diligence, and prudence to ascertain the conditions existing at all points where the cars were to stop, and otherwise to promote the convenience and guard the safety of passengers at all times when entering or leaving the car.' This language suggests a distinction which should be taken into account between street cars operated in the streets of a city which are stopped on signal, and interurban cars operated through the country, and which may be stopped at highway crossings. Cars of the latter description are stopped at any highway designated by the passenger, but the particular place in the highway at which the car shall be stopped is under the control of the conductor or motorman, and care should be exercised to stop the car at such place as is reasonably suitable for the purpose and as safe a place as can be reasonably selected."

This proposition is discussed in Nellis on Street Railways, vol. 1 (2d Ed.) sec. 300, wherein it is said:

"Persons embarking on or alighting from railway trains or street cars upon the invitation, expressed or implied, of the campany's officials, are justified in acting upon the assumption that the officials have taken proper precautions to insure their safety. One of such precautions is to avoid stopping its cars at places where it is not safe for passengers to embark or alight. It should either stop its cars short of, or pass them beyond, the danger point, where the company is under no direct obligation to repair or keep in good condition the bridges or streets along its right-of-way. A street railway company owes a duty to the public to stop at its regular crossings, on a seasonable signal, to receive those desiring passage. The stopping of a car at a place where people are standing waiting to get on board is an implied invitation to such persons to take passage on the car if they so desire. Where cars are accustomed to stop at a point between intersections of a street in order to switch, and passengers frequently board cars at this point, the public may assume that this place has been fixed upon as an appropriate place for the reception of passengers."

The case of Haas v. Wichita R. & Light Co. (Kan.) 132 Pac. 195, was similar to the instant case. In that case one of the acts of negligence charged was in failing to provide a safe place for passengers to board its cars. The trial court instructed the jury, to which the defendant saved an objection, "that if the defendant stopped its cars to receive passengers at the place where the injury occurred, it was bound to make the place reasonably safe for that purpose; also that persons entering a street car upon the express or implied invitation of the company are justified in assuming that proper precautions had been taken for their safety, and that one of such precautions is to avoid stopping cars at a place which is not safe for passengers to embark."

The Supreme Court of Kansas approved the instructions in that case, citing many cases in support thereof, also the section of Nellis on Street Railways, supra, then in the opinion used the following language:

"While many decisions affirm the liability of street car companies for injuries suffered by passengers alighting at places unsafe for that purpose, comparatively few have been found declaring a like liability to embarking passengers. This may be accounted for by the better opportunity of the later to see and avoid the danger. No good reason for distinction in principle appears. If the passenger is not negligent, the responsibility of the carrier is the same whether he is invited to take or leave the car."

A decision of the Supreme Court of Washington (Vasele v. Grant St. Electric Ry. Co., 48 Pac. 249) is cited by the Kansas court, saying:

"Where an electric car was stopped 20 feet beyond the crossing, at an elevated part of the road, dangerous because unfenced and unlighted, whereby a person intending to take passage was injured, the court said that stopping and keeping the car in that place was an implied invitation to the person to take passage and was a negligent act and the question of contributory negligence was for the jury." 132 Pac. 197.

In the case of Pfeffer v. Buffalo Ry. Co., 24 N. Y. Sup. 490, syl. par. 2, it was said.

"The fact that the crossing where the car had stopped was not a regular stopping place, and that stopping there was in violation of defendant's rules, did not release defendant's servants from the duty of looking out for any person attempting to get on board the car while stopping there, when the evidence showed that cars were constantly stopped there, and that the public had no notice of such rule."

In the case of Bass v. Concord St. Ry. Co., 46 Atl. 1056, the Supreme Court of New Hampshire, in a case very similar to the instant case, said:

"The case shows that the place where they might, and usually did, stop, was much safer than the one where they stopped when the plaintiff was injured. There is no ground for contending that this was not sufficient evidence of their negligence. The plaintiff

had been accustomed to get off the cars at the cemetery entrance, and in so doing, had never experienced any difficulty. Upon this occasion, with her attention largely absorbed in caring for her bundles, and being, as she considered, careful in her manner of alighting, she failed to look at the ground where she was about to step, and so stepped or fell into the hole opposite which the defendants had stopped the car. It is contended that it is the duty of all alighting passengers to look, and if they fail to do so, it follows, as a conclusion of law, that they are negligent. No matter how many and convincing the surrounding circumstances tending to show the reasonableness of the passenger's reliance upon knowledge of the situation obtained in some other way, they are not to be considered because of the definition of due care on the part of an alighting passenger has been developed into a formula as fixed as the statute law. Decisions are to be found wherein such a doctrine has been upheld in other jurisdictions, but they proceed upon a theory so at variance with the law of negligence in this jurisdiction as to be of little value here. The rule in this state is that each case is to be determined in the light of its own circumstances. Ricker v. Hall, 96 N. H. 592, 45 Atl. 556. * * * 'It may be conceded that, if the plaintiff had looked, she would have refrained from stepping as she did, and still the defendants may be liable. The fact that more precaution on her part would have prevented the accident does not necessarily defeat a recovery. The question is whether some fair-minded men might say that, with her knowledge and in her situation, she acted with reasonable prudence, without further investigating the condition of the ground she was to alight upon. The test of her right to have the question of her care determined by a jury was not whether she did all that she could do in the way of taking precautions, but whether she did enough so that her conduct might be thought to be that of a person of average prudence.' "

We are constrained to hold that the trial court committed no error in overruling the demurrer of the defendant to the evidence of the plaintiff, as well as objections to the introduction thereof, upon the ground that her petition failed to state facts sufficient to constitute a cause of action in her behalf.

Counsel for the defendant next discuss in their brief assignments of error from 2 to 7, inclusive, which go to the question of the court's refusal to give certain designated requested instructions to the jury. We have carefully examined the instructions and are of the opinion, and so hold, that the refusal of the trial court to give such instructions was not error, for the reason that the questions of law involved were either covered by the court in the instructions given to the jury, or were not applicable to the facts of

this case, or failed to state the proposition of law involved correctly; so under these circumstances the trial court properly refused to give the same.

The plaintiff in error's 8th assignment is that the court erred in giving instruction No. 9 to the jury, and its 9th assignment, that the court erred in giving instruction No. 3 to the jury. Instruction No. 9 was upon the question of contributory negligence, and was as follows:

"You are instructed that even though you should find that the plaintiff knew and realized the risk incident to boarding defendant's car in its unusual position, if any, you will find that the plaintiff was guilty of contributory negligence in so attempting to board the car, unless you find that she failed to exercise for herself the degree of care which a reasonably prudent and careful person would have exercised under the same circumstances."

The court in other paragraphs of its charge had instructed the jury that the burden was upon the plaintiff to prove her cause of action to the satisfaction of the jury by a preponderance of the evidence; that she must show by a perponderance of the evidence that she suffered an injury, and that said injury was occasioned by and through the negligence of the defendant, which was the proximate cause of her injury; and in paragraph 5, that the law requires that a person attempting to board a street car must exercise his ordinary senses in observing and seeing the condition of the place, and will not be justified in attempting to board the same unless the jury find that a reasonable person, acting under the same and similar circumstances, would have done so; that the law not only requires care on the part of the railway company, but requires that the person attempting to board a car must also exercise care, and if they are both guilty of negligence, the plaintiff cannot recover, for the law is that contributory negligence on the part of the plaintiff will bar a recovery by her, although the railway company itself may have been negligent. And in the 6th paragraph the jury was instructed that the mere fact that an injury occurred in this case carries no presumption with it of negligence, or that the plaintiff is entitled to recover, but before she would be entitled to recover she must prove by a preponderance of the evidence that the injury, if any, was caused through some negligent act of the defendant, and unless she had so proven, it would be the jury's duty to return a verdict for the defendant; and in paragraph 4, the court instructed the jury that when a person attempts to get aboard a car he must exercise reasonable and ordinary care and attempt the same in an ordinarily

safe and prudent manner, and if he fails to do so he cannot recover, and in this case, if the jury found that the manner in which the plaintiff attempted to board the car was not a reasonably safe one, but was negligent, as explained to them in the instructions, it would be their duty to find for the defendant. Paragraph 3 of the court's charge, complained of by the plaintiff in error, is quite lengthy, but was the one covering plaintiff's right to recover, and in applying the law we think the court carefully safeguarded every right of the defendant, and in no way relaxed the rule of law that requires that, before the plaintiff had a right to recover, she should prove all the material allegation of her petition by a' preponderance of the evidence; and, considering the instructions as a whole, we are clearly of the opinion that the giving of the instructions complained of were in no way prejudicial to the rights of the defendant, and that the cause should not be reversed on account of same. St. Louis. I. M. & S. R. Co. v. Marlin, 33 Okla. 510, 128 Pac. 108.

Counsel for the defendant say:

"It clearly appears to us that the cause comes squarely within this proposition, that if any negligence is proven, it was not the proximate cause of the injury received, and that the judgment is contrary to law, and not supported by the evidence; that the court should have sustained the application of the defendant to direct a verdict in its favor."

We cannot agree with counsel in their contention.

This court, in the case of Wichita Falls & N. W. R. Co. v. Cover, 65 Oklahoma, 164 Pac. 660, said:

"An act is the proximate cause of an injury when such injury was the natural and probable consequence of the act, and one that ought to have been foreseen in the light of the attending circumstances, and the question of proximate cause is one of fact for the jury, except, where the facts are not in dispute and reasonable men cannot differ on the question, it may become one of law for the court.'"

We have carefully examined the record, from which we are convinced that the trial court was not in error in submitting this question to the jury. St. Louis & S. F. R. Co. v. Davis, 37 Okla. 345, 132 Pac. 337.

We have carefully examined the record, and find no prejudicial error therein, and it is established law in this jurisdiction that in any action triable to a jury, where there is evidence reasonably tending to support the verdict of the jury, the same will not be disturbed on appeal. St. Paul Fire & Marine Ins. Co. v. Robison, 72 Oklahoma, 180 Pac.

702; McCoy v. Wosika, 75 Oklahoma, 180 Pac. 967.

The judgment of the trial court is affirmed.

OWEN, C. J., and RAINEY, PITCHFORD, McNEILL, and HIGGINS, JJ., concur.