(No. 19852.
LOUISE GRISWOLD, Defendant in Error, *vs.* THE CHICAGO RAILWAYS COMPANY *et al.* Plaintiffs in Error.

*Opinion filed February 21, 1930—Rehearing denied April 17, 1930.*

GEORGE W. MILLER, and ARTHUR J. DONOVAN, (FRANK L. KRIETE, and JOHN E. KEHOE, of counsel,) for plaintiffs in error.

JAMES C. MCSHANE, for defendant in error.

Mr. CHIEF JUSTICE FARMER delivered the opinion of the court:

Louise Griswold filed an action in the superior court of Cook county against several street railway companies doing business as the Chicago Surface Lines to recover damages for personal injuries received by her. We shall refer to the parties to the suit as plaintiff and defendants. The jury returned a verdict in favor of plaintiff in amount of $25,000 and judgment was entered thereon. Defendants appealed the cause to the Appellate Court for the First District, where the judgment was affirmed, and this court granted defendants' petition for writ of *certiorari* to review the record.

Plaintiff was a passenger about ten o'clock P. M. on September 18, 1926, on a south-bound street car on Halsted street, in the city of Chicago. It was her intention and that of her twelve-year-old daughter who was with her, to go to their home south of Seventy-ninth street, but the car on which they were riding on Halsted street did not go farther south than Seventy-ninth street, at which street intersection it turned east on a curve on its way to the car barns. For the purpose of going still farther south on Halsted street on another car plaintiff took a transfer. When the car in which plaintiff was riding approached the north line of Seventy-ninth street it stopped to discharge passengers. Plaintiff, her daughter and four or five other passengers left the car at the front end and alighted on the street about eight or nine feet south of the safety zone on the west side of the car. This safety zone was more than seventy feet in length, over six feet wide, and the south end of it was twenty-four feet north of the north building line of Seventy-ninth street, or about eleven feet north of the track switch-points, which were the beginning of the

curve of the car tracks from Halsted street into Seventy-ninth street. The evidence does not show who was responsible for placing the safety zone at that place, but it was marked on the pavement by white lines and by upright standards or markers. The street car was forty-eight feet long and extended beyond the rails on each side two feet and two inches. As it proceeded southeasterly around the curve into Seventy-ninth street the overhang reached a maximum of five feet two inches. When the street car passengers alighted the traffic lights were set for north and south traffic on Halsted street and automobiles were moving south between the safety zone and the west curb of Halsted street. The number of automobiles passing at the time was placed by the witnesses at from six to ten to a constant stream. Plaintiff and other passengers were standing about where they alighted from the street car. The street car moved forward and swung around the curve southeasterly into Seventy-ninth street, and in doing so the rear of it struck and knocked down plaintiff and three or four other passengers. Plaintiff was severely injured and was taken to the Auburn Park Hospital, where she was attended by Dr. Huntington, and on the following day, under the doctor's directions, she was removed to the Roseland Community Hospital. The doctor testified plaintiff sustained extensive abrasions and bruises and the neck of the left femur was fractured. She was placed on a special frame and a plaster cast was applied from the ribs down to the left foot. A turn-buckle was used to pull the leg down to the proper length. She remained in the cast for eight weeks, during which time, the doctor testified, she suffered great pain, was very nervous and required the administering of sedatives. On November 15 the cast was removed, and, there not having been a firm union, wooden splints from the armpit to the left foot were fastened on the body and the leg to prevent movement. This remained about four weeks and then a special steel splint was used

for about three months. The steel splint had a bar extending from between the shoulders to the left hip and heel and was held in place by two large leather straps. It was taken off some time in March, 1927, and the knee was then completely ankylosed. Plaintiff left the hospital about the middle of April and thereafter received daily massage treatments. She first required two crutches to move around. The motion of the hip-joint was limited and the left leg was half an inch short. At the time of her accident plaintiff was fifty-two years old and in good health, except a partial deafness. In May, 1928, she had a stroke, which for a time completely paralyzed the right arm and leg. Dr. Huntington testified the stroke was the result of high blood pressure, which resulted from worry caused by her injury. Dr. Adams testified, in answer to a hypothetical question, that plaintiff's injury was a sufficient cause for high blood pressure to cause the stroke and that the stroke was not the result of any hardening of the arteries. The doctors testified that the high blood pressure was caused by worry arising out of plaintiff's accident. The accident, of course, was a rather severe one, and the testimony is that plaintiff suffered much pain and had to have sedatives administered while she was in the hospital. Her injury is permanent. Defendants contend that the evidence showed the high blood pressure resulted from worry over the accident without being attended by pain, and that worry furnishes no standard for recovering damages. It is very evident from the testimony that plaintiff suffered much pain, and, of course, that caused her to worry and have anxiety as to her future. She testified that while she was in the hospital she suffered pain in her limb, but the pain gradually got better. Her stroke occurred in May, 1928. At that time her physical condition had improved and she was suffering no great pain. If the stroke resulted from her injury, it, of course, under the evidence, afforded an element to be considered in assessing damages. The case is predi-

cated on the claim that defendants were guilty of negligence in operating the car from which plaintiff had just alighted before her injury.

It is contended by defendants that plaintiff was not a passenger at the time of her injury, as she intended to do a little shopping at a fruit store near the northwest corner of Seventy-ninth and Halsted streets before using her transfer on her journey south. She had a transfer to be used going south, and the obligation of defendants to use due care for their passengers did not end the moment plaintiff stepped from the car. It was defendants' duty to furnish a safe place for passengers to alight and to exercise proper care for their safety immediately thereafter. (*Chicago Terminal Transfer Railroad Co.* v. *Schmelling*, 197 Ill. 619; *Pennsylvania Co.* v. *McCaffrey*, 173 id. 169.) It should be remembered that when plaintiff alighted from the car on the west side there was a stream of automobile traffic between the safety zone near which she alighted and the west curb of Halsted street. It is argued that she might by stepping forward have avoided the maximum swing of the car outward in making the circle into Seventy-ninth street. That would be true provided it appeared she would not have moved into the line of the automobile traffic. All this was a question of fact for the jury. While the facts were different in *Kelly* v. *Chicago City Railway Co.* 283 Ill. 640, from this case, in principle the rule of liability in such cases as this is stated.

It is urged by defendants that the court erred in permitting a hypothetical question put to a medical expert to be answered, on the ground that it assumed plaintiff suffered pain from the injury to the time of the stroke, and that the evidence did not warrant that element in the hypothetical question. That specific objection was not made to the question. It was allowable for the court to permit proof of the condition of health of plaintiff at and prior to her injury, followed by proof of the condition at the

time of the trial, and submit the question of the cause of her then condition as a question of fact to the jury. All the facts were before the jury, and defendants had opportunity to cross-examine the witnesses in the particular they claim the question was not competent.

During the trial X-ray pictures were introduced in evidence. They were taken very shortly after the accident for the purpose of guiding the attending physician in the treatment of the fracture and not for the purpose of the trial. The witness who took them testified she had been in the X-ray business eight years and had taken approximately 11,000 pictures in the three years prior to her testifying. They were taken on a standard machine in the most approved way the witness knew of taking them. They were taken under the doctor's orders. She remembered very well the circumstances of taking them. We regard the objections of defendants to the admissibility of the X-ray pictures as without merit.

Some other questions of admissibility of evidence were raised but they are of no importance in the consideration of this case.

It is urged the court erred in refusing defendants' instruction No. 2. It told the jury, in substance, that if plaintiff was standing in the space between the Halsted street car tracks and the west curb when the car was started forward, and if the jury believe that the place where plaintiff was standing was clear of the overhang of the car, and that after the front of the car had passed the plaintiff she changed her position so as to bring herself in contact with the rear of the car, then the verdict should be for defendants. There are a number of reasons why the court did not err in refusing the instruction. The question of negligence and contributory negligence was fully covered in other instructions given. The court instructed the jury that the burden was upon plaintiff to prove defendants' negligence; that not every accident or mishap makes a street

railway company liable to a person injured, but that if the injury to plaintiff was the result of a pure accident then she could not recover; that if the jury found that defendants were guilty of negligence at the time and place in question and that plaintiff was also negligent and caused or contributed to the injury she could not recover. We think the law governing the liability of defendants was properly laid down in the instructions given, and there was no error in refusing instruction No. 2.

Complaint is made by defendants that they urged in the Appellate Court prejudicial misconduct of plaintiff's counsel on the trial but that the court did not refer to the error in its opinion. It is again argued at length here that counsel for plaintiff was guilty of prejudicial conduct, and it is urged that this question be noticed in the opinion. It is contended counsel for plaintiff badgered some of defendants' witnesses and made prejudicial remarks in his address to the jury. We have read the questions propounded and the answers of the witnesses and the argument made to the jury and cannot say that plaintiff's counsel was exceedingly deferential to the witnesses in his questions, but there was nothing sufficiently serious in his conduct towards them which in our judgment warrants this assignment of error. In his argument, also, there was nothing of a prejudicial character to support the error assigned. Counsel must have some liberty in arguing a case but cannot themselves testify in their argument.

Defendants' liability in this case depended upon the facts. The court very properly refused to direct a verdict for defendants. There was evidence tending to support plaintiff's claim that her injury resulted from defendants' negligence. The Appellate Court affirmed the judgment, which concludes this court upon the question of fact where there was any evidence tending to support plaintiff's case.

We find no errors of procedure or of law requiring a reversal of the judgment, and it is affirmed.

*Judgment affirmed,*