STEINBURG and another, Executors, Respondents, vs. THE MILWAUKEE ELECTRIC RAILWAY & LIGHT COMPANY, Appellant.

*February 6—June 22, 1936.*

38

For the appellant there was a brief by *Shaw, Muskat & Paulsen* of Milwaukee, and oral argument by *Martin R. Paulsen.*

*Andrew W. Brunhart,* attorney, and *Ralph M. Hoyt* of counsel, both of Milwaukee, for the respondents.

The following opinion was filed April 28, 1936:

NELSON, J.   On February 3, 1933, Henry J. Steinburg, Sr., hereafter called the deceased, was a little past sixty-seven years of age.   For thirty-five years he had been engaged in the plumbing business at which he had worked steadily. According to the testimony of his son, the deceased was a man above the average intelligence, was in good health at the time of his injury with the exception of "rheumatics."   His arms were in good condition, he had a healthy appearance as you looked at him, his body appeared to be all right except that he walked a little slower on account of "rheumatics." He had good strength and actually performed manual labor as a plumber up to the time of his injury.   Just prior to his injury he was a passenger on one of defendant's streetcars which was proceeding in a northerly direction on North Murray avenue.   When the streetcar reached the south crosswalk of East Park place, an intersecting street, the motorman brought the car to a stop so that the passengers might alight therefrom.   The car stopped at the near side of the intersection pursuant to a rule of the public service commission. Passengers alighted at both front and rear exits.   The de-

ceased alighted through the front door. After he had alighted the motorman closed the door and then started the car. It was impossible for the motorman to start the car forward until the door was closed because the door and the brakes were interlocked and the brakes could not be released until the door was closed. When the car was started it immediately turned to the left along a curve onto East Park place. As the streetcar rounded the curve the rear end of the car struck the deceased, injuring him to such an extent as to cause his death a few weeks later. The streetcar in question is forty-seven feet two inches in length. Its normal overhang on a straight track is nineteen inches. The front step when down extends four inches beyond the normal overhang of the car. According to careful measurements made by a member of defendant's engineering staff, the maximum overhang of a car of that type at the curve in question is four feet one and one-half inches. The difference between the overhang at the step and the maximum overhang at the rear is twenty-six and one-half inches. One of the plaintiffs estimated that the maximum overhang of a car at that curve was five to five and one-half feet. He based his estimate upon observations made by him while standing along side of a streetcar as it went around that curve. He touched the car with his hand, then placed his foot directly under the point of contact, and then measured with a tape measure the distance from his foot to the rail.

On the day in question, the deceased was the last passenger to leave the car at the front exit. From the point of the exit to the right rear of the car where the maximum overhang existed was about forty feet.

It is undisputed that the door was not closed until the deceased was off the step and safely on the ground; that after stepping upon the ground he had only to move a distance of two or three feet at the most before reaching a place of

safety; that the street was free from traffic; and that the accident occurred in broad daylight. There is no testimony that the car started up with a jerk or that it was moved along the curve with unusual speed. The motorman was an experienced motorman. At the time of the accident he was being inspected for rating purposes by one of the defendant's instructors. The instructor was standing on the platform immediately back of the motorman. The accident was observed by two witnesses who were across East Park place, one of whom apparently did not observe or take note of what happened prior to the accident, the other of whom testified that the deceased got off the car, hesitated a moment, and then proceeded toward the curbing. There was but one passenger who observed the accident. She testified that the deceased walked rather slowly as he got off the car; that after he alighted the car started up immediately; that she watched the deceased slowly walking away or standing between the right side of the car and the east curb; that she watched him because she sensed the danger; that she turned around and looked and watched the car and saw it catch the deceased and throw him to the ground.

The principal contention of the defendant, and the only one which in our view need be considered, is that the court erred in not granting its motions for a directed verdict and for judgment notwithstanding the verdict, because there is no credible evidence to sustain the finding of the jury that the defendant's motorman was negligent and because the physical facts unquestionably show that the deceased was afforded a reasonable opportunity to proceed to a place of safety after he had alighted from the car.

There is no dispute as to the law applicable to a situation like this.

"A passenger alighting from a car after it has stopped at a regular stopping place is entitled to have a reasonable oppor-

tunity after leaving the car to get beyond danger from its movements and operation." *White v. Connecticut Co.* 88 Conn. 614, 92 Atl. 411; *Trail v. Tulsa Street Ry. Co.* 97 Okla. 19, 222 Pac. 950.

In the absence of evidence tending to show that the motorman knew or ought in the exercise of due care to have known that the deceased was in a place of danger (there being no conductor on the car), the only duty which the defendant owed to the deceased after he had safely alighted from the car was to give him a reasonable opportunity to get beyond the zone of danger.

A painstaking examination of the record fails to reveal any testimony which supports the finding of the jury that the motorman was negligent in moving his car forward before the deceased was given a reasonable opportunity to get to a place of safety, beyond the maximum overhang of the car. The car was not started until the step was folded up and the door closed. Nothing unusual happened as the deceased alighted from the car. In stepping to the street the deceased's foot must have been at least a few inches from the edge of the step. It is clear that he had to take but two or three short steps at the most to get beyond the hazard of the overhang. Just how long it took the car to move forty feet after starting up does not definitely appear. One of plaintiff's witnesses estimated the time as eight seconds approximately. The instructor testified that the car, in negotiating the curve, was not moving faster than two to three miles an hour. Even assuming that the car was moving at the rate of ten miles per hour when the deceased was struck by the overhang, resulting in an average speed of five miles per hour after the car was started (there is no testimony to that effect), it would take at least five or six seconds to move the car forty feet. Adding that time to the time which was required to close the door, release the brakes, and apply the power, would not be less than seven to nine seconds. In such a situation a jury

should not be permitted to find that the deceased did not have a reasonable opportunity to make the necessary two to three steps to get to a place of safety. After the deceased was safely off the car and afforded a reasonable opportunity to walk to a place of safety, the motorman, who was in sole charge of the car, had a right to assume that the deceased would withdraw far enough to avoid being struck by the rear end of the car as it swung around the curve in the usual manner. *Zalewski v. Milwaukee E. R. & L. Co.* 219 Wis. 541, 263 N. W. 577. After the deceased had safely stepped from the car and the car was started, it was not the duty of the motorman to look to the rear for the purpose of observing whether the deceased was in a position so close to the car as to be in danger of being hit by the overhang thereof. What was said in *Ryan v. Milwaukee Northern R. Co.* 186 Wis. 537, 203 N. W. 340, has some application here:

"Since it was necessary for the motorman to keep close watch forward, we do not consider that he was also required to look constantly to the rear to avoid such a collision as occurred. The law does not impose any such responsibility." (Citing cases.)

Plaintiffs cite numerous cases from other jurisdictions in which similar accidents were considered, and earnestly assert that in none of those cases was it held that the facts did not present a jury question. All of those cases are clearly distinguishable on their facts. In none of the cases cited did the passenger alight from the front entrance of a streetcar upon a clear open street with five or six seconds at the least to reach a place of safety. In *Walger v. Jersey City, H. & P. St. Ry. Co.* 71 N. J. Law, 356, 59 Atl. 14, it does not appear from which entrance the plaintiff alighted. The court said:

"According to the plaintiff's story, the accident happened *immediately* after he got off of the car, and before he had taken a single step away from it. In this situation of the case, it was manifestly proper for the trial judge to refuse to nonsuit."

In *White v. Connecticut Co., supra,* the plaintiff was riding in a large open car between its front and middle part. The car was stopped and the plaintiff alighted. The conductor of the car saw her take but two steps and knew that she was in a perilous condition when the car was started. The court said:

"Under such circumstances it is manifest that some precaution adapted to the situation should have been used, such as waiting until it could be seen that she was out of danger, or by warning her of the perilous situation that she was in. This was not done."

In *Virginia Trust Co. v. Raymond,* 120 Va. 674, 91 S. E. 613, the plaintiff claimed that the car started while she was alighting and before she could get her balance and get out of the way. The rear end of the car, in rounding the curve, struck her. Referring to the evidence the court said:

"It showed that after the car had stopped to allow other passengers and the plaintiff to alight, and while she was in the act of getting off from the front end with one foot on the ground, and was attempting to put the other foot down, the car was prematurely started forward at a rapid rate of speed (as one of the witnesses testified, 'The car went around the curve at a very rapid rate, more rapid than I have ever seen a car go around a curve, and I have been living on a curve ten years'), and before plaintiff could recover her balance and get out of the way, her clothing was caught by the fender on the rear end of the car as it swung around the curve and overlapped the track, and she was thrown down and seriously injured."

In *Boa v. San Francisco-Oakland Terminal Rys.* 182 Cal. 93, 187 Pac. 2, the plaintiff was struck by the overhang of a streetcar shortly after alighting from the front end. Adverting to the testimony, the court said:

"A witness to the accident, who stated that he was driving his wagon at a point about one hundred fifty feet to the rear of the car when the plaintiff stepped therefrom, testified that, when the car started, the plaintiff could not have gotten away

from the car at all; that she was just about taking her hand off the post ready to make a step, or had made a step; that she had not made two steps when the car struck her. . . . This testimony is sufficient to support the finding of the jury as to the cause of the accident. It was for the jury to determine the weight of the evidence in connection with the conflicting statements of the witnesses."

In *Wilson v. International R. Co.* 205 App. Div. 275, 199 N. Y. Supp. 562, the facts were not fully stated, so it does not appear that that case involved alighting from the front end of a car. The case was reversed for a new trial because the instructions were patently erroneous.

In *Trail v. Tulsa Street Ry. Co., supra,* a nonsuit was granted, but the supreme court reversed the case for a new trial. In that case the court said (p. 951):

"The stopping of a streetcar at a place more hazardous than that at which the car might conveniently have stopped to take on a passenger is negligence competent to go to the jury, together with any contributory negligence of plaintiff to determine the proximate cause of the injury. *Muskogee Electric Traction Co. v. Latty,* 77 Okla. 156, 187 Pac. 491."

In *El Paso Electric Co. v. Ludlow* (Tex. Civ. App.), 291 S. E. 619, the jury found in favor of the defendant that the motorman did not start the car from which the plaintiff had alighted without allowing her reasonable time to get beyond the point of danger from the movement of the car. The principal question determined in that case was whether the trial court erred in granting a new trial.

*Griswold v. Chicago Rys. Co.* 339 Ill. 94, 170 N. E. 845, involved a passenger who alighted from the front end of a car and was prevented from moving toward the curb by a stream of automobile traffic.

*Lyons v. Pittsburgh Rys. Co.* 301 Pa. 499, 152 Atl. 687, involved a situation where there was a cartway only ten feet wide between the rail and the curb which was partially occupied by a row of automobiles headed in the same direction as

the streetcar. The plaintiffs were knocked down and injured as a result of being hit by the rear end of a streetcar which overhung three feet. It is stated in the opinion (p. 688) :

"They were the last passengers to leave the car at this stop and were in reality caught between this overhang of the car and the automobiles standing opposite."

In *Holm v. Seattle,* 159 Wash. 618, 294 Pac. 261, the plaintiff alighted at the rear end of the car after the conductor had opened the gates for her to do so. Summarizing the plaintiff's testimony, the court said :

"She testified that immediately upon her alighting, and before she had time to move away from the car, it started and she was caught by the overhang of the rear end as it rounded the curve."

In *Jamieson v. Pittsburgh Rys. Co.* 309 Pa. 197, 163 Atl. 292, the plaintiff who alighted from a car found her way to the sidewalk blocked by an excavation. Before she could reach a place of safety, the rear overhang of the car struck her. The court there said :

"We are unable to agree with defendant's contention that no negligence on the part of the railway company was shown. It is certainly negligence to discharge passengers from a streetcar at a curve, especially at a time when the street at that point is under repair and it is obvious to the employees having control of the car that the overhang in making the turn may force passengers into a position of immediate danger."

It thus appears that all of the cases upon which the plaintiffs rely are clearly distinguishable from the situation presented in this case.

In our opinion the trial court should have directed a verdict in favor of the defendant or granted its motion for judgment notwithstanding the verdict.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment dismissing the plaintiff's complaint.

WICKHEM, J. (*dissenting*). I am unable to agree with the opinion of the court. In my view, there was a jury question both as to negligence and contributory negligence. The evidence was such as to warrant a conclusion by the jury that defendant's motorman paid no attention to deceased other than to ascertain that he was free of the car step. It seems to me that this falls far short of the high degree of care exacted of a carrier in favor of an alighting passenger. As I read the court's opinion, the case is made to turn upon the fact that deceased, by taking two or three short steps, could have reached a place of safety, and that since the car would necessarily take some seconds to move into a place of danger to deceased, he must have had a reasonable opportunity to move out of its path.

The vice of this, as it appears to me, is that it makes the duty of defendant dependent upon what was done by deceased. If deceased did not with sufficient celerity and regard for his own safety move out of the way of the overhang, that bears upon the question of contributory negligence. Had the court concluded that deceased was guilty of contributory negligence as a matter of law, I should be inclined to defer, although I am of the opinion that this also presented a jury question.

It seems to me that the result of this decision is that a railway company has no duty to protect passengers from injury by the overhang because every passenger may protect himself if he acts with due care. This seems to me to be wrong in principle and contrary to the authorities.

Railway companies carry all sorts of passengers—young, aged, able-bodied, and cripples. The care which must be exercised to the end that passengers have a reasonable opportunity to reach a place of safety must be taken with the apparent infirmities of the passengers in mind, as well as the traffic situation and all other factors bearing upon this opportunity. This is especially true with respect to the discharge of passen-

gers at the front end of a car when that car is about to make a turn that will bring into play the added overhang. Many passengers will not know of the impending turn, and those that are familiar with the course of the car may momentarily fail to appreciate the danger of being struck by the overhang. I cannot believe that the motorman has not a greater duty than is imposed by the court, and I think that there is sufficient evidence here to justify the jury's conclusion that no care was exercised for the safety of deceased.

I am authorized to state that Mr. Justice FOWLER and Mr. Justice MARTIN concur in this opinion.

FOWLER, J. (*dissenting*). I agree with the views expressed in the dissenting opinion of Mr. Justice WICKHEM, and to those views wish to add the following: I am of opinion that the motorman of a one-man streetcar is negligent who has stopped the car to allow passengers to alight from the front of the car at the near corner of a street intersection where the railway track makes a sharp left turn, and who starts the car without making any observation whether the passengers who have alighted are clear of the overhang of the car as it turns, or warning them to step clear of the overhang, just as the conductor of a two-man car is negligent who, while a passenger is alighting, signals for the starting of the car before he has taken proper observation to ascertain whether he is clear of the car steps. It is as convenient for the motorman to make the observation in the former case as for the conductor to make it in the latter, and the one observation may be made as quickly as the other and without any considerable increase of delay in starting the car. If the motorman has warned the alighting passengers to step clear of the overhang of the car as it makes the turn, it may be that he may, unless traffic conditions prevent, start the car when the passenger has cleared the step without making further observation, as time enough would elapse before the rear of the car reached the

passenger to enable him to take the two or three steps neces-sary to clear the overhang. But public safety as much re-quires reasonable precautions in the one case as in the other. The ruling in the instant case absolves the motorman of any greater care when the alighting passenger is a child than when he is an adult, and where, if an adult, he is not aware of the left turn in the track than when he is aware of it. This is not in accord with the rule that requires the highest degree of care in the operation of streetcars that is consonant with their practical operation. The reasoning of the opinion of the court might be appropriate to cases in which no left turn was involved, at left turns where the passenger alights from the rear of the car, and at left turns where the car stop is at the far corner of the intersection. But in the situation here present the overhang of the car at the turn involves dan-gers to passengers alighting from the front of the car not present in the other situations, and public safety requires, in my opinion, the additional precaution suggested on the part of the motorman. Under such rule and the evidence in this case, the motorman was negligent as matter of law. Perhaps the passenger was also so negligent, although the jury found otherwise. But even so, the comparative negligence of the two was for the jury to determine and necessary for entry of judgment. I think the case should be reversed for trial of the issue of comparative negligence.

A motion for a rehearing was denied, with $25 costs, on June 22, 1936.