## Susan Keator and J. B. Keator, her husband, *v.* The Scranton Traction Company, Appellant.

191    102
19 SC 332

*Negligence — Street railways—Passenger — Getting on car — Transfer ticket.*

Where a person is given a transfer ticket from one electric car to another which is a block distant, to enable him to reach the destination for which he has paid and, while in the cartway approaching the second car which is the proper car for him to take under the terms of the transfer, he is struck within five feet of the car by a piece of the trolley pole which broke while the conductor was turning it from one end of the car to the other, such person is a passenger, and is entitled to recover damages for the injuries sustained, if the railway company is unable to show the extraordinary care which it owes to a passenger.

Argued Feb. 22, 1899.  Appeal, No. 384, Jan. T., 1898, by defendant, from judgment of C. P. Lackawanna Co., March T., 1895, No. 286, on verdict for plaintiff.  Before Sterrett, C. J., Green, Mitchell, Dean and Fell, JJ.  Affirmed.

Trespass for personal injuries.

The facts appear by the opinion of the Supreme Court, and by the opinon of McPherson, J., of the 12th judicial district, specially presiding, on a motion for a new trial, which was as follows:

At the trial of this case, when the time arrived for the charge of the court, it was clear that the plaintiff's right to recover might rest upon either of two grounds.  She might have been a passenger under the defendant's care; and in that event she was entitled to a verdict, unless the defendant had proved the exercise of extraordinary care over the appliance of transportation that did her the injury.  If this ground was not well taken, she was still entitled to recover in the character of a person on the street, if the plaintiff had failed to exercise for her protection the ordinary care that was due to all persons, not passengers, upon the public highway.  She urged both these positions in argument and, manifestly, if there was evidence to support both aspects of her case, it was proper that both should be considered and decided.  While the case might, no doubt, have been put upon one ground only, it was evident that this course might perhaps impose upon both parties a needless burden; for if the court should be mistaken in its view, both would be obliged to bear the delay and expense of a second trial in order to have the other ground considered.  It seemed better that both questions should be disposed of, and accordingly both were decided by the appropriate tribunal—one by the court and the other by the jury.

The form of the verdict, of which complaint is now made, is due to the manner in which the defendant chose to try the case.  Apparently, the company was convinced that the plaintiff would not be held to be a passenger, and therefore could not successfully invoke the rule of extraordinary care; for it made no attempt to assume the burden of showing such care, and was content to offer no evidence on such important points as those

referred to in the charge upon this branch of the plaintiff's claim. The risk thus taken fell out against the defendant; the plaintiff was decided to be a passenger, and therefore, as her injury was indisputably due to the act of the defendant's agent, or to a defect in an appliance of transportation, the burden of proof lay upon the defendant to establish extraordinary care. As already stated, there was no evidence to show a discharge of this duty of a common carrier, and therefore the court was bound to direct a verdict in her favor. For the reason given, however, to do no more than this would have exposed both parties to the delay and cost of a second trial, if the court should prove to be mistaken in deciding her to be a passenger. The other question remained for decision; the facts upon which it depended were in evidence, and no reason appeared why the whole dispute should not be determined in one proceeding. The only method by which it could be determined was the method adopted, namely, to submit a question to the jury covering the remaining aspect of the plaintiff's case, and to make the answer a part of the verdict. No objection was made, the question was asked and answered, and the plaintiff's right to recover rests now upon the two grounds referred to. Both have been decided; the court has ruled that the defendant failed in the duty of extraordinary care, if the plaintiff is to be regarded as a passenger; and the jury has found that, if she is only to be regarded as a person upon the street, there was a failure in the duty of ordinary care. Even if the court's decision is wrong, the verdict is sufficiently supported by the decision of the jury in its special finding. Precisely stated, this finding means that the defendant's agent was negligent while attempting to change the trolley-pole from one end of the car to the other; for this was the question, and the only question, submitted by the court. Upon this point, the evidence was conflicting and fairly balanced, and we see no ground for interference with the verdict. The motion for a new trial is refused.

So far as this court is concerned, the conclusion just reached is decisive. But the Supreme Court will, no doubt, be asked to review the trial, and may find some erroneous ruling concerning defendant's duty toward plaintiff considered merely as a person on the street. In that event, the other question **must** be decided also—since the verdict has two independent **supports**

and therefore it seems to be my duty to state to the appellate tribunal the reasons that, in my opinion, justify the ruling that the plaintiff was a passenger. If she was a passenger, the verdict is right on that ground alone.

It should first be observed that the question now presented differs in an important respect from many of the decided cases, some of which were cited by counsel. The question is not: Had the plaintiff become a passenger under the defendant's care? This has often been the point for consideration; and there can be no doubt, that in such an inquiry a plaintiff must show, either that he had been actually received into or upon the carrier's vehicle, or had otherwise acquired a right to the carrier's protection. Clearly, therefore, a person standing upon the street, although he may intend to become a passenger, has not really assumed that character until he has placed foot upon the carrier's vehicle, or has in some other way become entitled to claim the carrier's care. If, therefore, the present plaintiff had not already begun her journey at Green Ridge, but had been injured in the city of Scranton while she was approaching the South Side car with the purpose of beginning a journey at that point, we should hold without hesitation that she had not yet been received by the carrier, and that her right was simply the right of a person upon the street.

Neither is the question this: Had the plaintiff ceased to be a passenger by the act of quitting the car at her journey's end?

The facts present a different problem, for unquestionably the journey had not been finished. It is undisputed, that the plaintiff had already been received by the defendant as a passenger, and had paid the fare that entitled her to be carried to a destination that had not yet been reached. The Green Ridge line and the South Side line did not connect by rail, and therefore, as the journey could not be made in one vehicle, the plaintiff was obliged to walk across an intervening space in order to take passage upon the South Side car. The question therefore may be stated thus: Did she cease to be a passenger by the mere act of descending from the Green Ridge car, her purpose in descending being, not to abandon the uncompleted journey, but to pursue it? Of course, the defendant's duty of protection was much less while she was upon the street than while she was in the car. As long as she was upon the street, the defendant was not

bound to protect her against assault or injury at the hands of other persons. It had no control over the highway, outside of its rails, nor any right to interfere with persons pursuing their avocations on the street, either upon foot or otherwise. Having no right of control it owed her no duty of protection against strangers; but upon what ground had the defendant ceased to owe the plaintiff protection as a passenger against its own conduct? It had control over its own agents and appliances of transportation. As far as these are concerned, its power was complete; its contract to carry was only partially fulfilled; the plaintiff was asking to have it fully discharged; the defendant was ready to discharge it; and upon principle, therefore, it is not easy to give a reason why, if the plaintiff was a passenger while she was stepping from the Green Ridge car, she did not continue to be a passenger while she was making her way to the car intended by the carrier to take her to the end of her journey.

I repeat, I simply mean a passenger entitled to protection by the company against its own acts or omissions and not against the acts or omissions of other persons upon the highway. How had the defendant obtained release from its contract obligation to use extraordinary care? The contract of carriage, of which the contract to use extraordinary care is a legal incident, had not been completed. The plaintiff had not reached her destination, although she had paid for her carriage and had a ticket entitling her to be taken to the end of the journey. In order to carry her over the remaining distance, the defendant had provided a second vehicle and had stationed it a block away, directing her to go to the spot where it would be found. In obedience to these directions, she had gone immediately to the place pointed out by the defendant's servant. She showed no disposition to break the journey; on the contrary, she was making every effort to complete it without interruption. At what point, therefore, and by whose act, did she lose her character as a passenger entitled to extraordinary care at the carrier's hands? Certainly, if the two cars needed to carry the plaintiff from Green Ridge to the end of her journey had been standing side by side in the city of Scranton, so that the plaintiff could have stepped from one platform to the other without touching the ground, no one would be found to contend, that, if she

had been injured while in the act of exchanging one car for the other, the injury was not received in the character of a passenger.

Neither, if the cars had been separated by a few feet only, ten feet, for example, could it be successfully argued that the plaintiff ceased to be a passenger by stepping to the ground and walking over this short distance. If distance is to be the test, how far might she go before she lost the character of a passenger, and took on the character of a passer-by upon the street? And if she thus ceased to be a passenger, upon what principle was she to reassume that character when she reached the other vehicle? Certainly not by the making of another contract, for no other fare could be exacted, and no other contract was contemplated by either party. The result, therefore, must be that if the defendant's position is sound the contract was suspended while the plaintiff was upon the ground, not because there was any agreement to suspend, or any abandonment of the journey, but merely because the contract could not be fulfilled upon a continuous line. Considering that the defendant made the contract with the knowledge that the line was not continuous, the reason does not seem adequate to excuse noncompliance with an important element, namely, the promise to exercise extraordinary care until the journey should be finished.

It is argued, however, that the defendant could not possibly exercise extraordinary care over the plaintiff, even against its own acts or omissions, because it could not distinguish a passenger from any other person on the street. Even if this were true, it is not a sufficient reason. No doubt it may be difficult (but by no means impossible), to distinguish; but the decisions pay no regard to this difficulty, although it existed in many of the cases where the carrier's duty of extraordinary care was nevertheless enforced. How is a railroad company to distinguish between a passenger in one of its stations, and a person who is merely a visitor or a lounger about the premises? Its duty to one is very different from its duty to the other, but each obligation is enforced at the suit of the appropriate plaintiff. The carrier is not allowed to escape its contract obligation to a passenger, by pleading the inconvenience of keeping its word. So, also, street railway companies maintain one or

more waiting rooms for the accommodation of persons intending to become passengers, or of persons who are already passengers and are waiting to be transferred from the line they have just left to the line that will carry them farther upon their journey.   These waiting rooms often contain persons that are entitled to different degrees of protection ; and it may be asked with as great, or as little, force, How is the company to distinguish between them?   To this, I can only repeat, that if there is a difference in the carrier's obligations, it is the carrier's business to discharge them according to their several terms. If the plaintiff's contract was in force while she waited upon the sidewalk, and as she walked across the street toward the defendant's car, she was entitled to the full measure of protection given her by the agreement; and the carrier could not escape the performance of this duty, merely because performance had become inconvenient or difficult through no fault of hers. Suppose, instead of waiting upon the sidewalk, the plaintiff had waited in a room provided by the company.   Being thus conspicuously in the defendant's care, could it then be doubted that she was a passenger, entitled to the company's protection against its own acts, during her progress toward the car?   And yet, the essential element—the contract—is the same in both cases; and the difference between the waiting room and the sidewalk is really unimportant.

The industry of counsel and my own examination has failed to discover any case so nearly like this as to be of authority, either direct or persuasive.   The cases that consider how and when a person becomes a passenger, or how the relation is terminated when the journey's end is reached, have no special relevancy.   The question here concerns an intermediate stage of the transaction, and in my opinion is open for discussion and decision upon principle.   The following text-books and cases, with some others, have been examined and considered : 5 Am. & Eng. Ency. of Law (2d ed.), 488–518 ; Hutchinson, Carriers, secs. 554, 612, et seq. ; Booth, Street Ry. Law, sec. 326, et seq. ; Patterson, Ry. Acc. Law, secs. 210–221 ; Creamer v. Ry. Co., 156 Mass. 320 ; Smith v. Ry. Co., 32 Minn. 1 ; Donovan v. Ry. Co., 65 Conn. 201 ; Platt v. R. R. Co., 2 Hun (N. Y.), 124 ; B. & O. R. R. Co. v. State, 60 Md. 449 ; Knight v. R. R. Co., 56 Me. 234 ; Hartzig v. R. R. Co., 154 Pa. 364.

I see no escape from the conclusion that the plaintiff was still a passenger as she approached the defendant's South Side car, and was therefore entitled to be protected with extraordinary care against injury by the defendant's agents or by its appliances of transportation. A contract giving her this right had been entered into when she stepped upon the car at Green Ridge, and this contract was still in existence when the car came to a stop in the city of Scranton. If her right under the contract to receive the defendant's extraordinary care against its own acts or omission (not against the act or omission of a stranger) was suspended during her passage from one car to the other, I have been unable to discover how or where, or upon what principle, such suspension took place.

I think, therefore, the plaintiff is entitled to judgment upon the reserved point, as well as upon the verdict, and therefore direct such judgment to be entered. To this direction, an exception is sealed in favor of the defendant.

Verdict and judgment for plaintiff for $4,670.83. Defendant appealed.

*Error assigned* among others was in directing judgment to be entered upon the verdict in favor of the plaintiff.

*Everett Warren*, with him *Edward N. Willard* and *Henry A. Knapp*, for appellant. — The appellee was not a passenger: Penna. R. R. v. Price, 96 Pa. 256; Donovan v. Hartford St. Ry. Co., 65 Conn. 201; Fetter on Carriers of Passengers, section 233; Cramer v. West End St. Ry. Co., 156 Mass. 320; Dodge v. Boston Bangor Steamship Co., 148 Mass. 215; Baldwin v. Fair Haven & Westville Ry. Co., 68 Conn. 567.

If the plaintiff was not a passenger the case was improperly submitted to the jury.

*Samuel B. Price*, for appellees.—The appellee was a passenger: 1 Fetter on Carriers of Passengers, sec. 228; Hutchinson on Carriers, sec. 559; Keokuk Northern Line Packet Co. v. True, 88 Ill. 608; Patterson's Ry. Accident Law, p. 214, sec. 220.

OPINION BY MR. JUSTICE DEAN, April 24, 1899:

Appellant operates two lines of electric passenger cars running out from the city of Scranton, one north, the other south;

the terminus of the one running north was at the corner of Penn
and Lackawanna avenues; of that running south, in front of
the Wyoming House, a block distant; the company provided a
continuous passage on both lines by transfer tickets.   On Au-
gust 30, 1894, Susan Keator, plaintiff, got upon a car of the
north line to go to Mountain Lake, a pleasure resort on the
south line.   She paid her fare, and when the car stopped at
the corner of Penn and Lackawanna avenues, got off; before
she left the car, the conductor gave her a transfer ticket which
read: " Good upon next south side car within thirty minutes
from nine o'clock."   She then walked to the starting point of
the south side car in front of the Wyoming House.   While
standing on the pavement, the trolley car pulled up and stopped;
as it would proceed to its destination in an opposite direction,
the motorman attempted to change the trolley pole to the other
end of the car; in doing so, it broke, and a piece of it struck
Mrs. Keator on the head and shoulder, inflicting a severe injury;
when stricken, she had moved from the pavement to a point
midway between the curb and car; the distance from car to
curb was about ten feet; at the time, the seats had been reversed
in the car, which was an open one, and she was approaching it
to get on.   On the trial in the court below, two questions arose,
one of law for the court, and one of fact for the jury.   On the
undisputed facts, was plaintiff, at the time of the injury, in a
legal sense, a passenger on defendant's road?   If so, then she
was entitled to recover, for defendant adduced no evidence of
that high degree of care, such as is incumbent on a common car-
rier of passengers, when one has been injured by any of the
machinery or attachments of the car or other vehicle in which
the passenger is being transported.   If she was not a passenger
then did the company exercise that ordinary care in manipulat-
ing its machinery which it owed to others occupying and using
a common highway?   The court decided the first question in
favor of plaintiff, but to save a second trial, if such ruling should
be error, it submitted the evidence bearing on the second ques-
tion to the jury, directing them to make a special finding as to
that branch of the case.   On this question, the jury answered,
that defendant had not exercised ordinary care in changing the
trolley, consequently there was a finding for plaintiff on both
grounds; her damages were assessed at $4,670.83.   Afterwards,

in a very full opinion filed, the court overruled a motion for a
new trial, and entered judgment on the verdict.

The case turns here, on whether the court below was correct
in holding on the undisputed facts, that plaintiff, at the time she
received the injury, was a passenger. We think grave injus-
tice might have been done defendant by the method of trial, if
its liability had depended on the answer of the jury to the sec-
ond question. The court pointedly decided and explicitly an-
nounced, as matter of law, that defendant owed to plaintiff, as
a passenger, extraordinary care, and then submitted to them the
evidence, to determine whether it had exercised towards her, as
a traveler on the highway, ordinary care. A jury of lawyers
would doubtless have clearly perceived the distinction so per-
spicuously pointed out by the court; but with the large majority
of laymen, it would not be comprehended, and if comprehended,
would in many cases not be heeded. In considering the second
question, the jury would start with the conviction that defend-
ant had violated its lawful duty to its own passenger, and prob-
ably, therefore, had neglected a less rigorous one to the general
public. In the face of the law, as declared by the court on the
first question, a corporation's chance for a favorable verdict on
the second, was a very remote one with the ordinary jury. We
would hesitate to sustain the court's method of reaching a ver-
dict, however commendable the motive, if the correctness of the
judgment depended on the jury's answer to the second question;
defendant was entitled in fairness to an answer on the second
from a jury, unprejudiced by a decision against it on the first.

But, taking the undisputed facts, was the plaintiff's relation
to defendant at the time of the injury that of a passenger? If
so, then the burden was on defendant to show it had exercised a
high decree of care towards her because of that relation. It of-
fered no evidence as to the strength of the trolley-pole; whether
it had been subject to inspection at any time; whether age and
constant use had destroyed the tenacity of its fiber; or even
whether it was ever safe for its purpose. The fact stood out
undisputed, that in manipulating the pole in the usual way, it
broke and injured plaintiff. Unquestionably, defendant failed
in its duty to her, if she was a passenger. It must be conceded,
we think, that the transfer ticket, on its face, was an undertak-
ing to carry her from the point where the car started, in front

of the Wyoming House, to her destination on the south side line. She was not a passenger, while on the sidewalk going from one point to the other. Thus far, the construction of the carrier's contract, from the undisputed circumstances and the ticket, is palpable. When did the obligation of the contract end with regard to her at this interval? It must be borne in mind, as so clearly pointed out by the learned judge of the court below, that the injury to her was from a defect in an indispensable attachment of the very vehicle in which defendant had undertaken to carry her. It was not a side-tracked car, or an unused one, which she had no right to get on, but, in the common phrase, it was "her car," that had been provided by defendant to carry her to her destination, which caused the injury. There is no definition of the duty of defendant to plaintiff which fits the facts of this case. That cited and relied on by appellant, 1 Fetter on Carriers of Passengers, sec. 233, applies to a different state of facts. The author says : " When he (a passenger) steps from the street-car to the street, he ceases to be a passenger when he alights. The street is in no sense a passenger station for the safety of which the street railway is responsible. When a passenger steps from a street car upon the street, he becomes a traveler upon the public highway, and terminates his relation and right as a passenger, and the railway company is not responsible to him as a carrier for the condition of the street, or for his safe passage from the car to the side-walk." And again, on page 229 of same book, " the special duty of a carrier to exercise a high decree of care begins only when, by coming upon his premises, or in the act of entering his vehicle, the actual relation of the passenger to the carrier is assumed."

The cases cited by the author amply sustain the text, but not one of them is a case where the passenger was injured by a defective attachment to the vehicle from which the passenger alighted, or which he was about to enter. Unquestionably, the carrier is not answerable for the condition of the highway on which the passenger alights, or from which he stands or steps before entering the car; nor is it answerable for the conduct of third persons who, by neglect, cause injury in such situation to the passenger. But in the case of these particular conveyances, electric cars, necessarily and immediately, on the car stopping at the end of the route the motorman proceeds to re-

verse the trolley; ordinarily, this is attended with no danger to any one; the act is performed while some of the passengers have alighted and are on the sidewalk out of reach of the trolley-pole; some are between the curb and the car, and probably some yet in the car. Can it be argued with any plausibility that, in changing the trolley-pole, the carrier owes no duty to its passengers who are not out of reach of danger from a part of the very vehicle in which they have been carried? Clearly, the duty to the passenger, under such circumstances, with that kind of vehicle, does not end the moment the passenger's foot touches the street. And so with the next starting car: She has traversed the sidewalk, and is on the pavement in front of the Wyoming House; the car moves up to the end of the line in front of her and stops; she steps outside the curb and moves towards it; the seats are being reversed; two or three passengers are already in the car; when within four or five feet of it she is struck by the broken pole, which of necessity is being changed. Why is she within reach of this peril? She is not a traveler on the highway, is not a resident who desires to cross the street; is not a mere spectator who, from curiosity or idleness, stands in that situation with reference to the car; she is there because, under the stipulations of the contract then in her possession, she has a right to take passage on that particular car at that point. In no sense is she one of the general public on the highway; she is at that point, at that particular juncture, because she could not receive the consideration of her contract, a passage to Mountain lake, if she were anywhere else. If it were not for her contract, she would not be there at all. Surely, in such situation, under such circumstances, the carrier's duty to her was what it owed to a passenger, as much so, as if her injury had been caused by a rotten step on the car. When she came within reach of the vehicle provided for her transportation the carrier's duty was, that she should not be injured by the vehicle, if the highest degree of care could prevent it. Such care appellant was bound to show affirmatively; it did not attempt to show it. Therefore it is answerable in damages for her injury.

The judgment is affirmed.