# Baron *v.* Wilkes-Barre Railway Company, Appellant.

*Negligence—Street railways—Alighting from car—Presumption.*

1. In an action against a street railway company by a passenger to recover damages for personal injuries sustained by plaintiff while alighting from a car at a usual stopping place in an unsafe and dangerous condition, no presumption of negligence on the part of the defendant arises from the mere happening of the accident, and the burden is upon the plaintiff to prove negligence and an instruction to the contrary is reversible error.

2. Where a plaintiff in an action to recover damages for personal injuries testifies that two hours before the accident she had boarded a car which she had difficulty in mounting because of its height from the ground and, returning two hours later upon another car to the same place where she had entered the first car, while attempting

## 104    BARON v. WILKES-BARRE CO., Appellant.

to alight alone, without asking assistance, she stepped into a hole and was injured, and the defendant requested the court to instruct the jury that "if it was light enough for plaintiff, in the exercise of usual and ordinary care, to have seen the condition of the ground where she attempted to alight, and notwithstanding she stepped into a hole, she would then be guilty of contributory negligence and cannot recover in this case," the refusal to give such instructions is reversible error.

3. It is not negligence for the employees of a street railway company to fail to volunteer to assist a passenger to alight when owing to her physical peculiarities she knew that she needed assistance but failed to request the same.

Argued March 6, 1918. Appeal, No. 41, March T., 1918, by defendant, from judgment of C. P. Luzerne County, on verdict for plaintiff in case of Jacob Baron and Lillie Baron v. Wilkes-Barre Railway Company. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ. Reversed.

Trespass for personal injuries. Before GARMAN, J.

The facts are stated in the opinion of the Superior Court.

The jury found a verdict of $811.75 in favor of the plaintiff, Jacob Baron, and of $905.90 in favor of the plaintiff, Lillie Baron, upon which judgments were entered. Defendant appealed.

*Errors assigned,* among others, were answers to defendant's points, quoted in the opinion of the Superior Court.

*Paul Bedford,* and with him *Frank A. McGuigan* and *John T. Lenahan,* for appellant.—No presumption of negligence on the part of the defendant arises from the mere happening of the accident: Thomas v. Railroad Company, 148 Pa. 180; Beck v. Railroad Company, 233 Pa. 344; Rist v. Rapid Transit Company, 236 Pa. 218.

*Abram Salsburg,* and with him *Mose H. Salsburg* and
*W. Alfred Valentine,* for appellees.

OPINION BY PORTER, J., February 28, 1919:

The plaintiffs brought this action of trespass to re-
cover damages alleged to have been sustained by Mrs.
Baron when alighting from a car of the defendant com-
pany.   They recovered verdicts and judgments in the
court below and the defendant appeals.   Mrs. Baron
testified that she had, about eight o'clock on the evening
of September 8, 1913, in company with her child and a
niece, taken an open summer car of the defendant com-
pany, with a running board along the entire side, which
she had difficulty in mounting because of its height from
the ground, and ridden to Miner's Mills to visit a friend.
Returning from Miner's Mills about two hours later she
boarded another open car and again had such difficulty
in mounting the running board that she required the as-
sistance of the friend whom she had been visiting.   Ar-
riving at the public square, Wilkes-Barre, about ten
p. m., at the same place where she had entered the other
car about two hours earlier, her niece alighted and took
the child from the car, and she (Mrs. Baron) attempted
to alight alone, without asking for assistance, by step-
ping on the running board and from the running board
to the pavement.   She described the manner in which the
accident occurred as follows: "I held on to the car, and
stepped off the running board with my left foot, and
then I let my right foot down and kind of left loose
and it seemed just as if there was a hole there . . . . . and it
kind of went under, my foot went under, and I went
against the tree, my shoulder and my head."   "Q. Did
you see a hole there"?   "A. No, sir, I didn't, it was dark
when I looked out."   She testified that she suffered a
severe injury to her right ankle, which required medical
treatment for a considerable period, rendered her in-
competent to perform her usual duties and that she re-
mained crippled down until the time of the trial.   When

she fell two men assisted her to arise and conducted her to a seat in the park, where the injury to her ankle was examined by a physician and she was taken to her home. Other witnesses testified that at the public square, or park, where the accident happened, there was next to the park a sidewalk, large elm trees, two feet in diameter and one hundred feet high, grew at intervals near the outer edge of the sidewalk, outside of these trees was the track of the defendant company and a short distance beyond the outer rail of that track was the curb, and on the other side of the curb was the cartway of the street. None of the witnesses stated of what material the sidewalk was composed, but they all agreed that the space between the sidewalk and the curb, including the part between the rails of the defendant company's track, was paved with brick, except a space around each of the large trees, which was left unpaved, manifestly for the good of the trees. The accident happened at one of these trees and two witnesses on behalf of the plaintiffs testified that it was caused by Mrs. Baron's right foot lighting in the unpaved space about the tree, that the open space extended about two feet from the tree and that the surface of the ground in that space was four or five inches lower than the surrounding brick pavement.

The plaintiffs' statement of claim charged that the defendant company had been negligent in three particulars: (1) Failure to provide a safe and proper place for plaintiff to alight; (2) Failure to provide a stool or other device to assist her in alighting; and (3) Failure of defendant company's employees on the car to assist her in alighting. The plaintiff testified that the employees of the company failed to furnish any stool or bench upon which she might step from the running board and that they made no offer to assist her to alight, but she admitted that she had not requested assistance. There was no evidence in the case from which a jury should have been permitted to find that the car in question was so constructed that normal individuals using

reasonable care could not descend therefrom with perfect safety. If, owing to physical peculiarities of the plaintiff it was unsafe for her to use the appliances which are altogether adequate for ordinary passengers, she ought to have called the attention of the employees of the defendant company to that fact and asked for assistance. It is not, in such circumstances, negligence for the employees of the company to fail to volunteer their assistance: Scanlon v. Philadelphia Rapid Transit Co., 208 Pa. 195. The failure of the employees of the company to assist the plaintiff to alight and furnish her with a stool or bench upon which to step from the running board was not such negligence as would entitle these plaintiffs to recover. Whether the evidence was such as to warrant the submission to the jury of the question of defendant's negligence in failing to provide a safe place for plaintiff to alight, is not free from difficulty. The evidence disclosed that this was the terminus of that particular line of cars of the defendant company, all persons who were then in the car were to leave it at that point. There was ample space to stop the car at a point where it would have been clear of the trees, and where the entire space was paved. Street railway companies are not ordinarily responsible for the condition of the pavement of the public highways where passengers alight, but the employees must be presumed to be familiar with the conditions at a terminal, where all passengers must leave the car and if they ought to have seen that those conditions involved danger to a passenger who was not familiar with the surroundings and they have a discretion as to the particular spot at which they are to discharge passengers, it may be a question for a jury whether they should not select the safer place.

The first assignment of error relates to the refusal of the court below to charge that "No presumption of negligence on the part of the defendant company arises by reason of the fact that the plaintiff had been a passenger upon its car and was in the act of alighting, under the

circumstances of this case." The injury complained of did not result from the breaking of machinery, collision, derailment of cars or any accident to the appliances of transportation and the point ought to have been unqualifiedly affirmed: Beck v. Railroad Co., 233 Pa. 344; Rist v. Rapid Transit Co., 236 Pa. 218. The defendant's fourth point, which was, "If it was light enough for plaintiff in the exercise of ordinary care to have seen the condition of the ground where she attempted to alight and notwithstanding she stepped into a hole, she would then be guilty of contributory negligence and cannot recover" should also be affirmed. If it was light enough at the time the accident occurred for plaintiff, in the exercise of ordinary care, to have seen the condition of the ground and she failed to exercise such ordinary care she was not entitled to recover: Scanlon v. Philadelphia Rapid Transit Co., supra; Mahoney v. Philadelphia Rapid Transit Co., 214 Pa. 180; Keator v. Traction Co., 191 Pa. 112; Sligo v. Philadelphia Rapid Transit Co., 224 Pa. 135. The principles established by the cases cited would preclude a recovery by this plaintiff if the accident had happened in daylight. The first and third specifications of error are sustained.

There is no presumption that it is the duty of a street railway company to maintain the streets or sidewalks of the highways through which its lines pass. There was, however, in this case evidence tending to show that this defendant company had at least contributed to the original construction of the pavement in question. The contract under which the work was done was actually in court but it does not seem to have been offered in evidence, although a witness was permitted to testify without objection to a part of its contents. Several of the witnesses refer to the sidewalk and all of them make a distinction between the pavement upon which the plaintiff alighted and the sidewalk. The tracks of the defendant company are repeatedly referred to as between the sidewalk and the curb. The cartway of the street,

upon which general traffic was carried on, was beyond the curb. The track of the defendant company, so far as we can gather from the evidence, was between the sidewalk and the cartway. Was this strip of ground used for purposes of any other traffic than that of the street railway? The evidence does not seem to indicate that it was. We cannot say, under the evidence as now presented, that this defendant had not undertaken to maintain this pavement, the failure to keep which in proper condition might not be negligence. Upon the question of the contributory negligence of the plaintiff, the weight of the evidence may have been in favor of the defendant. The large tree must have been within three feet of her when she was standing upon the running board of the car, it is certainly probable that she ought to have seen that tree and known that the continuity of the pavement was likely to be broken at its foot. By taking a step along the running board she would have been entirely clear of the tree and could have descended in perfect safety. The evidence of a number of witnesses as to the manner in which the public square and surrounding streets were lighted would seem to render it difficult to believe that the plaintiff ought not to have seen the place upon which she was alighting. She, however, testified that it was very dark and the question was for the jury.

The judgment is reversed and a venire facias de novo awarded.