## BYRON W. BAIRD v. CHICAGO, MILWAUKEE, ST. PAUL & PACIFIC RAILROAD COMPANY.[1]

January 3, 1930.

No. 27,587.

[1]Reported in 228 N. W. 552.

128

*F. W. Root, C. O. Newcomb, A. C. Erdall* and *W. H. & H. W. Gillitt*, for appellant.

*Tautges, Wilder & McDonald* and *F. M. Miner*, for respondent.

HOLT, J.

Defendant appeals from the order denying its motion in the alternative for judgment notwithstanding the verdict or a new trial.

The action is to recover damages for the loss of two phalanges of the thumb and three of the index finger of plaintiff's right hand on September 28, 1928, while engaged in interstate commerce in the employ of defendant as switchman in one of its extensive switch-yards at Chicago, Illinois. The accident occurred in the evening when the signals to the engineer, in train movements, were by lantern. These in short were the circumstances:

In this particular part of the yard track 17 is a lead running in a southwesterly direction from switch 18. Going west from switch 18, tracks branch off westerly from the lead on its northerly side and are numbered successively from 18 to 24 and up. Just before

the accident the switch engine, headed west, had gone in on track 22 and pulled out on the lead a cut of 12 cars, backing east until the cut was some four or five car lengths east of switch 18. The switchmen were informed before the movement began that the 10 westerly cars of the cut were to be kicked in on track 24 and the two cars next to the engine were to be set in on track 21. The conductor and fieldman's duties were to line up the switches so that the 10 cars, on being kicked, would run in upon track 24, and plaintiff's duty was to cut them. To do that he properly mounted the stirrup at the northwest corner of the second car from the engine, lifted the lever at the end of the car to pull up the pin of the coupler and to hold it there until, after the kick, the engine slowed down, permitting the 10 cars to be carried by the momentum of the kick onto track 24. The signal for the kick was given. The cut had acquired a speed of around 14 or 15 miles an hour, when the conductor, seeing that the cars headed in on track 23, gave a washout signal, which to the engineer meant to stop as quickly as possible. The engineer shut off the steam and applied the brakes, but before these were fully set there was a violent collision with cars standing on track 23. The corner of the car upon which plaintiff rode telescoped or ran under the next car in front, and plaintiff's right hand was caught and injured as already stated. The one whose duty it was to line up or close the switch for track 23 neglected so to do.

Defendant contends that it is entitled to judgment notwithstanding the verdict. Although contributory negligence was pleaded as the sole proximate cause, that defense was abandoned at the trial and is not here urged as a basis for judgment. The ground insisted on is assumption of risk. This cannot be sustained. To make out that defense it must be proved that plaintiff had knowledge of and appreciated the risk. The evidence is conclusive that plaintiff did not know, and in his position could not ascertain, that the switch for 23 was not properly lined up. He had no reason to apprehend that his fellow servant had been negligent in that respect. He neither knew nor appreciated that a collision was impending. Not knowing or being able to know that it was about to happen, when

.the washout signal was given, it might well appear to plaintiff that with the car he was riding moving at a speed of over 15 miles an hour, according to his estimate, it was less risk to stay on than step off in the dark, when there was a quick stop. The defense of assumption of risk was submitted to the jury and resolved in plaintiff's favor. We need not cite a great number of authorities to the proposition that knowledge of the conditions that threaten injury and appreciation of the peril arising therefrom must be established in order to make out the defense of the assumption of the risk. C. & O. Ry. Co. v. DeAtley, 241 U. S. 310, 36 S. Ct. 564, 60 L. ed. 1016; Rase v. M. St. P. & S. S. M. Ry. Co. 107 Minn. 260, 120 N. W. 360, 21 L.R.A.(N.S.) 138; Fitzgerald v. Armour & Co. 129 Minn. 81, 151 N. W. 539.. Furthermore, the risk of injury from collisions under circumstances like those here present is not one which is to be anticipated in the ordinary work of a yard switchman. The court ruled correctly when it refused to direct a verdict or grant judgment non obstante on the ground that the defense of assumption of risk had been established.

Defendant also claims that the amount of the verdict, $10,000, is excessive, brought about by misconduct of counsel and in some degree by the court's instructions permitting a duplication of items making up the damages. As to the latter, the criticism made in Cox v. C. G. W. R. Co. 176 Minn. 437, 223 N. W. 675, is in part applicable.

But a more serious objection to the trial had is the charged misconduct of counsel which is claimed to have incited passion and prejudice as expressed in the large verdict. Properly enough defendant produced as witnesses four switchmen or switch foremen, who for years have been employed by defendant in its switchyards, each having one hand mutilated more than was plaintiff's. These men testified that, in spite of missing fingers and as to one even the whole hand, they did the work of switchmen without much difficulty. For plaintiff medical experts had ventured the opinion that plaintiff could never again work as a switchman. In his argument to the jury plaintiff's counsel severely condemned defendant for producing these switchmen as witnesses, saying that they were

"compelled to come into court to wave their shame and misery." And when objection was made to such argument, counsel, unchecked by the court, continued in the same strain saying:

"I felt sorry for those men. They suffered serious injuries. They were hurt before this remedial law was ever passed. They did not have the benefit of the law which railroad company employes have had since 1908, but those poor fellows are simply being used as live decoys to influence a jury in giving a man like Baird less than he ought to have."

It is submitted that on the issue of damages it was just as proper to bring in men who with similar or worse hand injuries were actually doing the work and earning the wages which plaintiff's medical experts said plaintiff could never do or earn. We think counsel's attack on defendant for adducing entirely proper and, as we consider, the very best testimony bearing on the damages to be assessed by the jury, was uncalled for and tended to incite passion and prejudice against defendant. We cannot avoid the conclusion that there was misconduct of counsel which prejudicially affected the defendant. This, with the charge permitting the assessment of damages for both disability to work and the loss of earnings, past and future, undoubtedly resulted in the excessive verdict of which defendant complains.

Were this a less clear case for recovery we would not hesitate to grant a new trial as to all the issues. But since the amount of recovery appears to be the only issue upon which any serious controversy can be had, we have concluded that if plaintiff, within ten days after the going down of the remittitur, file his consent in the court below to the reduction of the verdict to $6,000, as of the date of its rendition, the order appealed from will stand affirmed; if such consent be not filed within the time stated, the order will stand reversed in so far as a new trial was denied, and the court below will proceed with a new trial.

DIBELL, J. (dissenting).

I do not agree that the verdict should be reduced from $10,000 to $6,000.

The plaintiff sustained loss of time of the value of $1,000. He will sustain further loss. He suffered pain and will suffer still. He will work again at something. Perhaps he will be a switchman; others with somewhat like injuries have. In competition with others his handicap will be great. Though his employer may favor him, his chance for work is not as it was. The economic tendency is to reject men such as he is and to take those who are without blemish. His work for 27 years has been that of a switchman, where he gets good wages. Other work will bring him much less. Some of the medical testimony is that his physical and mental makeup is such that he will be slow to adjust himself to the changed condition brought by his injury. And he has a permanent and humiliating deformity which is not to be overlooked when compensating for injury. Naturally enough he will accept the reduction. The delay, expense, and uncertainty of result upon a new trial practically prevent a different course. If the litigation has been conducted on a contingent basis there is no profit to his counsel in a new trial though he should get the amount of the first verdict; and his personal interest will not favor it.

Were it not for the misconduct of counsel at the trial and an error of law, which are told in detail in the opinion, the verdict in my opinion should stand. The misconduct of counsel was gross and the error of law a definite one. Because of them there should be a new trial rather than a conditional reduction. There should not, I think, be an effort to measure the evil influence of the misconduct of counsel and the error of law at $4,000 to the defendant, for which the plaintiff should pay. Perhaps there should be a new trial only of the question of damages, for the right of recovery is clear. The defendant was negligent, the plaintiff was not, and there was no assumption of risks.

STONE, J. (dissenting).

I concur in the views expressed by Mr. Justice Dibell.