## F. E. ELLWEIN AND OTHERS v. T. A. HOLMES AND ANOTHER.[1]

January 14, 1955.

No. 36,322.

*Ryan, Ryan & Ebert,* for appellants.
*Hadlick & Diessner* and *M. Eleanor Nolan,* for respondents.

KNUTSON, JUSTICE.

For the purpose of this decision the facts may be briefly stated. On July 23, 1952, the individual plaintiffs entered into an agreement with defendants under which plaintiffs purchased the Coca-Cola plant of defendants at Brainerd, Minnesota. The contract was then assigned by the individual plaintiffs to the corporate plaintiff. This action thereafter was brought to recover damages for the alleged

---

[1]Reported in 68 N. W. (2d) 220.

fraudulent misrepresentation of the value of some of the items purchased. Defendants answered denying liability and interposed a counterclaim against all plaintiffs for the unpaid balance of the contract. The jury found in favor of plaintiffs and, after offsetting the balance which the parties agreed amounted to $12,143, awarded plaintiffs a verdict in the sum of $1,357. This appeal is from an order of the trial court denying defendants' alternative motion for judgment notwithstanding the verdict or for a new trial.

1. At the close of plaintiffs' case defendants moved the court to dismiss the action as to the individual plaintiffs on the ground that they had no personal interest in the action other than as stockholders of the corporation and that it further appeared from the pleadings that all their rights under the purchase agreement had been assigned to the corporate plaintiff. There was no motion to dismiss the counterclaim against the individual plaintiffs. While it is difficult to see how the individual plaintiffs could have any interest in the action after assigning the contract to the corporate plaintiff, we do not believe that failure to dismiss under these circumstances was so prejudicial as to warrant a new trial.

2. The more serious assignment of error relates to defendants' claim of misconduct on the part of counsel for plaintiffs. During his cross-examination of defendant Holmes, plaintiffs' counsel apparently sought to show that the records of Brainerd Coca-Cola Bottling Company had been secreted so that they would not be available at the trial of this case.[2] He was met by flat denial. In spite of this

---

[2]"Q. Do you recall the evening of August 1 or 2 when you were here in Brainerd and Mr. Sherman and Mr. Ellwein were here?

"A. Yes.

"Q. You do?

"A. Yes.

"Q. And subsequent to that time Mr. Sherman's car broke down near Camp Ripley down there?

"A. Yes.

"Q. And they found you were enroute down that way and you stopped and picked them up on the highway, didn't you?

"A. Yes, I did.

"Q. And drove them down?

fact, in his argument to the jury counsel proceeded to state as fact that which he had been unable to elicit from the witness. His statements are as follows:

"Where are the rest of their records? This man who couldn't remember where they were in this court house before in a lawsuit didn't know if they were in Georgia, whether they might be in the plant here, didn't know where they were, he forgot that he picked up Mr. Sherman and Mr. Ellwein that night when their car broke down, he was so loaded down with records they couldn't get their suitcases in his trunk and the back seat was full, and he told them that he was hiding them down at Hutchinson so that the courts

"A. Yes.

"Q. What did you have in the back seat of your car that night and in your trunk?

"A. I don't remember everything; I had my baggage in there and had probably some records; I don't remember just exactly what I did have.

"Q. Didn't you tell them those were your records of your Brainerd Coca Cola Bottling Company?

"A. I don't remember telling them that.

"Q. Didn't you tell them that you were hauling them down to secret them down to Hutchinson; didn't you tell them that both this Court was after those records and so was the Wage and Hour Administration?

"A. No.

"Q. You didn't tell them that?

"A. I told them the Wage and Hour—I told them we had some trouble with the Wage and Hour, we had some trouble with the Wage and Hour at the other two plants.

"Q. You had just paid a rather sizable amount down at St. Cloud, hadn't you?

"A. Oh, no.

"Q. Hadn't you just paid some money down there?

"A. Oh, no.

"Q. Or at any of your other plants?

"A. No.

"Q. In any event, it is true the Wage and Hour Department was wanting to examine your records, weren't they?

"A. They examined all the records they asked to examine.

"Q. Or all that were available to them?

"A. They got all they wanted; all that they asked for, they got."

couldn't get a hold of them and neither could the Wage and Hour Administration."

Counsel for defendants promptly objected and requested that the court instruct the jury to disregard the statements. The following then ensued:

"The Court: The jury will recall that testimony was in the form of questions put to the defendant, T. A. Holmes; I do not recall any direct testimony from the other persons with respect thereto. Counsel, was there any?

"Mr. Diessner: It was my recollection that he did affirm in cross examination the fact that he had those records and was—and was taking them down there to Hutchinson to store in the second floor of the—

"The Court: Counsel undoubtedly has inadvertently made a positive statement concerning them, but the jury will disregard any statement of counsel made during argument which is not in conformity with the facts and evidence as you remember them, and if the Court should say anything to you in this statement or later in the instructions which does not agree with your own recollection as to what the evidence was, you will disregard even the remarks of the Court because the Court too can be as wrong as counsel in remembering the evidence; you will apply your own recollection as to what the evidence shows and give it preference over statements of either the Court or counsel, and you will entirely disregard any such statement from any source which does not have its foundation in the evidence. Proceed, counsel.

"Mr. Diessner: In any event, the manager of the Hutchinson plant was here in the court room and after those inquiries about books being kept down there, I did not see the defendants call the manager of the Hutchinson plant to ask him any questions as to whether those books were or were not there or any questions about any other matter in this lawsuit. We called him; we asked him one or two questions because we had found out about these coolers being taken down there, but that completed his testimony."

While we have been reluctant to reverse for misconduct based upon counsel's argument to the jury when the court instructs the jury to disregard the remark, there are cases where even this is not enough to erase the harm done. Here the court's instructions are hardly sufficient. The evidence in the case is such that the decision could have gone either way. The case is based upon deceit and fraud. It is the type of case which would lend itself easily to suggestions of the kind made by counsel. The jury should have been told in no uncertain terms that there was no evidence to justify the remarks made; that counsel had no right to make such statements; and that they should not be considered by the jury at all. Even then it is doubtful that the harm would have been completely eliminated. In cases such as this, if counsel persists in taking chances on injecting into the case insinuations or suggestions that are apt to lead to inferences which they cannot establish by admissible evidence in the belief that, if opposing counsel objects and the court instructs the jury to disregard the remarks, we will hold it is not grounds for a new trial, it is time to say that there are cases in which we cannot overlook conduct of this kind. When this situation appears it leaves us no alternative but to grant a new trial if lawsuits are to be determined, as they must be, on the evidence before the jury.

There are other statements in the argument of counsel which likewise are subject to criticism. We need not discuss them here since we assume that they will not be repeated upon a new trial.

3. Defendants also assign as error the admission of a certain exhibit 4. One of the main items of plaintiffs' cause of action consisted of a claim that certain coolers were listed upon a balance sheet shown plaintiffs prior to the purchase of the property at a cost of $19,461.87, whereas they actually cost $10,151.17. To substantiate this claim, plaintiffs offered in evidence exhibit 4, a list showing the coolers involved, the alleged value as shown by cards kept by defendants, and what was alleged to be the invoice price. The last item was inserted by plaintiffs. The foundation for the invoice price inserted in the exhibit was hardly sufficient to warrant its reception. The individual who prepared it stated that he had

obtained the information from one Carlson. Carlson did not state where he had obtained the information. To bolster up the foundation, Wilfred H. Day, who was assistant secretary of the Coca-Cola Bottling Company of Minnesota, was called as a witness by plaintiffs. He stated that he was familiar with the price of the type of coolers involved and that the co-called invoice price was the cost of such coolers. He admitted, however, that there would be variations in the cost to defendants depending on shipping charges, whether the coolers were bought on time or for cash, and possibly when they were purchased. The term "invoice price" was misleading as the jury might infer therefrom that such price represented the amount actually paid for the coolers. There is no evidence to sustain such conclusion. Under the circumstances we think that the foundation for the reception of the evidence was insufficient. We need not determine whether it was so prejudicial, in view of other testimony in the case, as to justify a new trial, but upon a new trial we think that a more satisfactory foundation should be laid before the exhibit is received in evidence.

We have examined the other assignments of error, but, in view of the fact that there must be a new trial, we do not consider it necessary to pass upon them.

Reversed and new trial granted.