# EDWARD J. PATTON v. MINNEAPOLIS STREET RAILWAY COMPANY.

77 N. W. (2d) 433.

May 25, 1956—No. 36,728.

*Ray G. Moonan, Frank X. Cronan,* and *John E. Castor,* for appellant.

*Joseph P. Johnson* and *William W. Essling,* for respondent.

DELL, CHIEF JUSTICE.

Action for injuries sustained by plaintiff when he was run over by a bus of the Minneapolis Street Railway Company in which he had been a passenger and from which he had alighted just prior to the accident. The jury returned a verdict in plaintiff's favor for $52,500. This is an appeal from an order of the trial court denying defendant's motion for judgment notwithstanding the verdict or for a new trial.

The action has been tried twice before. In the first trial there was a special verdict in which the jury, in answer to an interrogatory, found that plaintiff sustained damages as a result of the accident in the amount of $52,500. The special verdict was set aside by the trial court because of its error in submitting the "last clear chance" doctrine and because of doubts that there was sufficient evidence to support the theory of "discovered peril." In the second trial, the jury disagreed and was discharged. Subsequently, defendant's motion for judgment notwithstanding the disagreement was denied and the case set down for retrial.

In the appeal here the following questions are presented: (1) Is the evidence sufficient to support a finding of negligence on the part of defendant; (2) did the evidence establish as a matter of law that plaintiff had assumed the risk of his actions or that he was guilty of contributory negligence; (3) did the court err in its instructions; and (4) was there prejudicial error in its conduct of the trial or in the final argument of plaintiff's counsel?

The facts in the light most favorable to plaintiff are as follows: On April 1, 1951, at about 11:30 p. m., at the intersection of Laurel Avenue and North Lyndale Avenue in the city of Minneapolis, plaintiff alighted from a Minneapolis Street Railway Company bus

which had been traveling south on Lyndale Avenue and was about to turn west therefrom onto Laurel Avenue. The bus stop at this intersection is on the west side of Lyndale just north of Laurel.

Plaintiff testified that after he alighted from the bus he observed a snowbank three or four feet in height at its high point covering the west curb of Lyndale and extending on a slope three or four feet into the street for some distance northerly along the west curb; that he then noticed the bus was "nosed in" toward the west side of Lyndale with its front end almost up to the edge of the snowbank; that he turned to face the bus and commenced shuffling toward the rear looking in that direction as he moved; that, after he had moved a foot or two toward the rear, the bus commenced to move preparatory to turning the corner; that he then began pounding on the glass on the side of the bus but that it kept moving and pushed against him until he lost his footing and went under it; that he then saw its right rear dual wheels moving toward his head and that he grabbed something and pulled himself partially out from under them but that they ran over his body; that he lost consciousness but recovered momentarily and again lapsed into unconsciousness; that there had been nothing to obscure him from the driver's view after he alighted from the bus and was standing in the street; and that it was only about five seconds after the bus stopped before it again commenced to move.

■ While it is true that an adult passenger on a bus or streetcar ceases to be such after he alights therefrom,[1] the carrier's duty of exercising for him the degree of care required of it for its passengers continues thereafter until he has had reasonable opportunity of getting beyond danger from the vehicle's operation or movement,[2] and this duty encompasses the carrier's obligation of exercising reasonable care in selecting a reasonably safe place for the purpose of

[1]Kieger v. St. Paul City Ry. Co. 216 Minn. 38, 11 N. W. (2d) 757; Ruddy v. Ingebret, 164 Minn. 40, 204 N. W. 630, 44 A. L. R. 159.

[2]Jacobson v. Omaha & C. B. St. Ry. Co. 109 Neb. 356, 191 N. W. 327, 31 A. L. R. 563; Keator v. Scranton Traction Co. 191 Pa. 102, 43 A. 86, 44 L. R. A. 546; Steinburg v. Milwaukee Elec. Ry. & L. Co. 222 Wis. 37, 266 N. W. 793.

discharging him,[3] although it is not otherwise responsible for the condition of streets, sidewalks, or boulevard surfaces.[4]

■ With these principles in mind and after a thorough examination of the record, we are of the opinion that here there is sufficient evidence to create fact issues as to defendant's negligence,[5] as to plaintiff's contributory negligence or assumption of risk, and as to the issue of proximate cause in relation thereto.[6] A great portion of defendant's argument on appeal relates to discrepancies or inconsistencies in the testimony of plaintiff at the three trials herein with the claim that they are such as to require that all his testimony be disregarded. They relate principally to his testimony relative to his position when he first alighted from the bus; his knowledge of the conditions there present; the number of steps he thereafter took toward the rear of the bus; and other like questions. After a careful consideration thereof, it is our view that such discrepancies were of a minor nature and at the most merely presented issues as to his credibility which properly were left to the jury for determination.[7]

■ We have examined the instructions of the trial court and do not find material error therein. Insofar as they relate to defendant's duties to plaintiff after he had alighted from the bus, they conformed to the legal principles hereinbefore expressed. Likewise, as to the principles governing superseding intervening cause and the instructions with reference thereto, we are of the opinion that the evidence justified the instructions on this issue and that those given fairly expressed the applicable law thereon.[8] Since there was no

[3]Reid v. Minneapolis St. Ry. Co. 171 Minn. 31, 213 N. W. 43; Gillson v. Osborne, 220 Minn. 122, 19 N. W. (2d) 1.

[4]Gillson v. Osborne, 220 Minn. 122, 19 N. W. (2d) 1; Reid v. Minneapolis St. Ry. Co. 171 Minn. 31, 213 N. W. 43.

[5]Jensen v. Dikel, 244 Minn. 71, 69 N. W. (2d) 108; Teas v. Minneapolis St. Ry. Co. 244 Minn. 427, 70 N. W. (2d) 358.

[6]McCarty v. Chicago, M. & St. P. Ry. Co. 154 Minn. 350, 191 N. W. 819.

[7]Blumberg v. Palm, 238 Minn. 249, 56 N. W. (2d) 412; Grengs v. Erickson, 225 Minn. 153, 29 N. W. (2d) 881; Moeller v. St. Paul City Ry. Co. 218 Minn. 353, 16 N. W. (2d) 289, 156 A. L. R. 371.

[8]Jelos v. Oliver I. Min. Co. 121 Minn. 473, 141 N. W. 843; Mason's Dunnell, Minn. Practice, § 2039.

evidence that plaintiff at the time of the accident was under the influence of intoxicants, the court properly refused defendant's request that the jury be instructed that: "A man who has been drinking is required to exercise the same degree of care for his own safety and that of others as he would had he not been drinking."[9]

The contention that plaintiff's counsel was guilty of misconduct during the trial prior to the final argument is not supported by the record. Moreover, it appears that defendant's counsel was of the same opinion at the time of the trial for in his closing argument to the jury he stated:

"* * * I also think that I would be unmindful and not appreciative were I to pass and not make the remark at the outset of my argument as to the fair and courteous manner of counsel on the other side of this case. Partisan, yes, that is their duty. Zealous, yes, that is their duty. *But courteous, and at all times fair, even in their zealousness.*" (Italics supplied.)

Defendant's claim that it is entitled to a new trial because of misconduct of plaintiff's counsel in his final argument to the jury is not supported by the record either. One of the alleged acts of misconduct deals with the following: Dr. John Edward Twomey was called as a witness for the plaintiff. He was one of the doctors who cared for the plaintiff upon admittance to the hospital on April 1, 1951. On June 30 an "off-service record" of the hospital was signed by him. Dr. Twomey testified that an off-service record is a brief summary regarding the injury and care that a patient receives in order that resident doctors coming on service may "get a bird's eye view of the case." On this off-service record Dr. Twomey had written "There was an odor of alcohol to his breath." Counsel for the plaintiff, in examining the doctor, developed that Dr. Twomey had made previous hospital notes and that there was no entry concerning "an odor of alcohol" on them. The doctor testified that he had no independent recollection of plaintiff having an odor of alcohol upon his breath at the time of his admittance to the hospital and further said

---

[9]Mechler v. McMahon, 184 Minn. 476, 239 N. W. 605.

that "all memorandum of the off-service record [was] put on at the request of other parties."

Defendant's counsel in his final argument to the jury, when commenting upon the off-service record, stated: "Nobody is claiming in this case he [plaintiff] was drunk or intoxicated" and "but don't think we claim Mr. Patton was drunk or intoxicated, and there is no effort to make him that in this case." He then argued, however, that plaintiff was not telling the jury the truth when he said "he had nothing to drink by way of alcoholic beverage that night" and also stated to the jury "Plaintiff's own doctor, Dr. Twomey, called by the plaintiff, his credibility vouched for by the plaintiff, said that upon admission to the hospital plaintiff had alcohol on his breath. If plaintiff's doctor is right, Mr. Patton was not telling you the truth there."

Plaintiff's counsel, in his final argument to the jury, in answer to the argument of defendant's counsel respecting the entry pertaining to the odor of alcohol on the off-service record, stated: "He [Dr. Twomey] told you frankly, fearlessly and fairly that he put this entry in this record because he was told to do so. He was ordered to put that into this record," whereupon the following occurred:

"Mr. Moonan: I take exception to counsel's statement to the jury as not predicated upon the evidence.

"The Court: Sustained.

"Mr. Moonan: Prejudicial. We move the Court to instruct the jury to disregard it.

"Mr. Essling: I don't understand the objection.

"The Court: The objection is to certain statements that have not been brought out in testimony. In so far as that is concerned, you will disregard any statement as to what the testimony is if it is not in the evidence as you recall it. Proceed.

"Mr. Essling: In this record that he was told to put in here—

"The Court: Just a moment, is there any evidence to the effect he was told to put it in?

"Mr. Essling: Yes, your Honor, I submit that there is.

"The Court: If there is, proceed, and the jury will ascertain whether there was such testimony.

"Mr. Essling: And you will note from this entry here, which Mr. Moonan and the Minneapolis Street Railway Company rely for corroboration is this, 'There was an odor of alcohol to his breath.' It doesn't say that Dr. Twomey noticed it.

"Mr. Moonan says that nobody was making any effort to prove that Mr. Patton was drunk or that he had anything to drink. All he was trying to establish was that there was an odor of alcohol on his breath. You can consider in the light of Dr. Twomey whether this record may have been made in anticipation it might get into court before a jury at some time.

"Mr. Moonan: Just a minute, I am forced to take another exception to counsel's statement as highly prejudicial.

"The Court: Overruled.

"Mr. Essling: I submit that the interests opposing Edward Patton were at the time, on June 30, 1951, interested in making a trial brief to use against him when the case came into court.

"Mr. Moonan: Same objection, highly prejudicial, not predicated upon the record in this case, and a statement outside of the record.

"The Court: The matter will be fully covered in the instruction of the Court.

"Mr. Moonan: Very well."

From what transpired it is clear that counsel for defendant, while admitting that no claim was made that plaintiff was intoxicated, was, nevertheless, vigorously attempting to make the most of the entry "There was an odor of alcohol to his breath" while plaintiff's counsel, with equal vigor, was attempting to minimize it. This is not unusual in a hard-fought case between experienced trial lawyers, nor would it be surprising if the recollection of both counsel were faulty in a trial that occupied two weeks and presents a record here of almost 1,000 pages. The testimony of Dr. Twomey does show, however, that the entry did not appear on the earlier hospital notes. And it appears from other testimony of the doctor that the entry was, in part, "put on [the off-service record] in order to put in there

that there was an odor of alcohol on his breath." On the record here, counsel for plaintiff's argument to the jury was not so far out of bounds as to require a new trial, particularly in view of the statement of the court that "The matter will be fully covered in the instruction of the Court" to which counsel for defendant responded, "Very well." That the instructions of the trial court satisfied defendant must be presumed since there were no exceptions to them nor was any request for additional instructions upon this phase of the case made.

At one point in his final argument, counsel for plaintiff said, when referring to the testimony of a witness: "I don't know of anybody except a mean man, a brute, would ever come in and testify to anything like that * * *," and at another point, when referring to the testimony of another witness: "I think the sum and substance of that man's testimony could be emphasized on the word heel." These statements, of course, should not have been made and are not condoned by this court, but no objections were made to them by defendant during the course of the argument nor was there any objection made to them at the close of the argument. Neither did defendant request, either before or after the charge, that the jury be admonished to disregard them.

Unless the misconduct is so flagrant as to require the trial court to act on its own motion,[10] which is rarely the situation and is not the case here, in order to raise the claim of misconduct there must be an objection at the time of the alleged misconduct, or at the close of the argument when it has been taken down by the reporter, and before the jury retires; also a request for corrective action and the failure of the court to act.[11] A party is not permitted to remain silent, gamble on the outcome, and, having lost, then for the first time claim misconduct in opposing counsel's argument.

A careful examination of the remainder of the argument of plaintiff's counsel to the jury and of the assignments of error relating to

[10]See, Magistad v. Potter, 227 Minn. 570, 36 N. W. (2d) 400; Janicke v. Hilltop Farm Feed Co. 235 Minn. 135, 50 N. W. (2d) 84.

[11]Jurgensen v. Schirmer Transp. Co. 242 Minn. 157, 64 N. W. (2d) 530; Eiola v. Oliver I. Min. Co. 201 Minn. 77, 275 N. W. 408.

it disclose nothing sufficiently objectionable to require a new trial on the ground of misconduct. It would have been better, of course, if some of the remarks had not been made but it seems fair to assume that they did not influence the jury. It should not be overlooked that in the first trial, in which the special verdict was set aside by the trial court for errors of law only, the jury found, in answer to an interrogatory, that plaintiff's damages were in the sum of $52,500. In this trial, where misconduct is claimed, the verdict was $52,500. In this situation it is difficult to make out a case of prejudice. There have been three trials and this long drawn-out litigation should come to an end unless prejudice has been shown and an injustice has been done. A new trial is never granted for misconduct of counsel as a disciplinary measure but solely to prevent a miscarriage of justice.[12] Whether there should be a new trial for misconduct of counsel rests almost entirely in the discretion of the trial court, and its action will not be reversed on appeal except for a clear abuse of discretion.[13]

The claim that prejudicial error was committed by the lower court in the conduct of the trial has been carefully considered and is found to be without merit. We do not consider the alleged errors in that respect to be of sufficient importance to require discussion.

In a dissent which has appeared since this opinion was written, portions of counsel for plaintiff's argument to the jury have been quoted. These matters have already been covered in this opinion with the exception of the very last quotation and in that connection the dissent fails to point out that immediately following it the court, on its own motion, admonished counsel and corrected any erroneous impression the jury might have received by stating:

"The Court: Now, that is not a correct statement of the law, any more than you should say as to what they would want to pay if they were defendants. Disregard any comment putting you in the position of either plaintiff or defendant."

[12]Nelson v. Twin City Motor Bus Co. 239 Minn. 276, 58 N. W. (2d) 561; Harris v. Breezy Point Lodge, Inc. 238 Minn. 322, 56 N. W. (2d) 655.

[13]14 Dunnell, Dig. (3 ed.) § 7102 (note 23); Harris v. Breezy Point Lodge, Inc. 238 Minn. 322, 56 N. W. (2d) 655.

The trial court, which was in a far better position than we are to determine whether defendant had a fair trial, has approved the verdict and refused to set it aside. We cannot say that the court abused its discretion, and the order denying defendant's motion for judgment notwithstanding the verdict or for a new trial must be affirmed.

Affirmed.

THOMAS GALLAGHER, JUSTICE (dissenting).

I am in accord with defendant's contention that it was deprived of a fair trial by the conduct of plaintiff's counsel during his final argument to the jury. Therein, repeated statements were made as to defendant's witnesses, characterizing them in a manner entirely unjustified and unsubstantiated by the record, to most of which timely and proper objections were made by defendant's counsel. Illustrative thereof are the following excerpts from such argument:

"[Mr. Essling, plaintiff's counsel] * * * And he [Dr. John A. Twomey] told Mr. Moonan [attorney for defendant], when he asked him, that the statement in there, an odor of alcohol on admission, had nothing to do with advising or informing the on-coming doctor as to how to treat Mr. Patton. He told you frankly, fearlessly and fairly that he put this entry in this record because he was told to do so. *He was ordered to put that into this record.*" (Italics supplied.)

"* * * You can consider * * * whether this record may have been made in anticipation it might get into court before a jury at some time."

"Mr. Essling: *I submit that the interests opposing Edward Patton were at the time, * * * interested in making a trial brief to use against him when the case came into court.*" (Italics supplied.)

"Mr. Essling: * * * when we are on the question of sympathy and prejudice, there are some things that are not entirely sympathy and some things * * * that are not entirely prejudice that you can bear in mind to help you weigh and help you in deciding what you are going to decide in this case. For instance, when they brought Mr. Jensen and Lundquist into court and Mr. Jensen, surly as he was, told how the man that he knew for only seven days of employ-

ment was so bad that I felt ashamed, and *I don't know of anybody except a mean man, a brute, would ever come in and testify to anything like that* * * *. But you didn't hear anybody tell about the time in Pearl Harbor when Edward Patton went into the United States Air Force, and we were mighty glad to have him then, we were proud of him then, and I think probably Jensen was, too. * * *" (Italics supplied.)

"[Mr. Essling] * * * I think of O'Donnell or O'Connell, Doctor, whatever his name is, a professional and expert witness who was paid to come in here and who wants you folks to believe and tell you that Eddie Patton, who is living out at the Minnesota Soldiers Home, in the crippled building, can throw that cane away with a five-eighths inch heel and go back to work. *I think the sum and substance of that man's testimony could be emphasized on the word heel.*" (Italics supplied.)

"[Mr. Essling] * * * when you got your summons to appear in this Court House, report for jury duty, nobody told you, that summons didn't say you had to leave your hearts and your minds at home. * * * And the summons to report for jury duty didn't tell you you had to come in and act as human icicles and be frigid and cold towards anybody that made a claim, and I am sure that you didn't regard it as that. All that the law expects of jurors is that they be fair and act as reasonable persons and that you do *the same as you would want to have done in your situation were you the plaintiff.*" (Italics supplied.)

There are other instances similar to the above wherein plaintiff's counsel went far beyond the record in his closing argument. Taken all together they not only gave the jury a distorted view of the evidence but without question unjustly prejudiced its members against defendant and its witnesses. See, Rian v. Hegnauer, 210 Minn. 607, 299 N. W. 673; Prescott v. Swanson, 197 Minn. 325, 267 N. W. 251; Baird v. Chicago, M. St. P. & P. R. Co. 179 Minn. 127, 228 N. W. 552. It is true that at times during the course of the argument the trial court admonished the jury to disregard statements of this kind and to use their own recollection of what the evidence established. It is

true that, where we have felt that the effect of counsels' prejudicial remarks have been cured by admonitions of the trial court, we have held that no prejudicial error results. Koenigs v. Thome, 226 Minn. 14, 31 N. W. (2d) 534. But where, as in the instant case, such prejudicial excursions beyond the record become so numerous, pointed, and violent, we have generally concluded that any instructions which the trial court may have given with respect thereto must have failed to nullify their adverse effect. Ellwein v. Holmes, 243 Minn. 397, 68 N. W. (2d) 220; Jeddeloh v. Hockenhull, 219 Minn. 541, 18 N. W. (2d) 582; Swanson v. Swanson, 196 Minn. 298, 265 N. W. 39. Here I cannot escape the conclusion that the remarks of plaintiff's counsel as referred to above were of such a nature as to require a new trial in the interests of justice.

KNUTSON, JUSTICE (dissenting).
I concur in the dissent of Mr. Justice Thomas Gallagher.

FRANK T. GALLAGHER, JUSTICE (dissenting).
I concur in the dissent of Mr. Justice Thomas Gallagher.