Ben Ruzgis, Appellant, v. Guy A. Richardson et al.,
Trading as Chicago Surface Lines, Appellees.

Gen. No. 39,841.

Opinion filed
May 11, 1938. Rehearing denied May 26, 1938.

WRIGHT & KAMIN, ROSS LEE LAIRD and THOMAS W.
WINTON, all of Chicago, for appellant; ALFRED KAMIN,
of counsel.

FRANK L. KRIETE, WARNER H. ROBINSON and ARTHUR J. DONOVAN, all of Chicago, for appellees; JOHN R. GUILLIAMS, of Chicago, of counsel.

MR. PRESIDING JUSTICE HEBEL delivered the opinion of the court.

This is an appeal by the plaintiff from a judgment entered by the court for the defendants notwithstanding the verdict of the jury for the plaintiff.

Plaintiff's action was one to recover damages for personal injuries sustained when he was struck by a street car operated by the defendants who are the receivers of the various associated companies which operate under the name and style of Chicago Surface Lines. Upon the trial the jury returned a verdict for the plaintiff, assessing damages at $10,000. Notwithstanding this verdict, the court, as we have stated, entered a judgment for the defendants.

No question was raised as to the sufficiency of the pleadings, and from the facts offered in behalf of the parties, it is evident that on May 7, 1934, at 6:45 a. m. the plaintiff left his home at 5841 south Peoria street in Chicago to go to his place of employment at 44th street and Ashland avenue. He boarded a westbound 59th street car at 59th and Peoria. He received a transfer upon payment of his fare and rode to Ashland avenue, about one mile west of Peoria. He alighted from the front end of the 59th street car, walked south on the east crosswalk on Ashland avenue until he reached the curb on the southeast corner. Being favored by the stop light located at that place, he then turned west and walked to the south crosswalk at 59th street. There was a street car standing in the northbound tracks on Ashland avenue as plaintiff came up to the tracks. The plaintiff came up to about 2 to 2½ feet from the car and then turned to his left and walked south directly in line with the safety island located on

Ashland avenue on the east side of Ashland avenue street car tracks. Ashland avenue runs north and south at 59th street, and is about 70 feet wide. 59th street runs east and west and is about 40 feet wide. Street car tracks are located on each street and operate in both directions. About 10 feet south of the south building line of 59th street, there is a switch point or movable rail in the northbound rails of Ashland avenue. This was operated by a switch hook which was inserted to move the switch point and thereby enable a car to turn northwest into the westbound tracks of 59th street. On Ashland avenue is a raised cement loading platform or safety island, adjacent to the northbound tracks, with its western edge about 2½ feet from the east rail of the northbound track. The safety island is 4½ feet wide and 75 feet long. The north end of the island is 29 feet 7 inches from the south building line of 59th street. The normal overhang of the street car involved on a straight track is 22¼ inches on the body and 15¾ inches on the front and rear bumpers. According to the testimony of the defendants' engineer, a car taking the curve from Ashland avenue into 59th street would have an overhang of 2 feet 8 inches when the rear right-hand corner would reach the north end of the safety island. The overhang increases as the car moves around the switch tracks and 10 feet north of the north end of the island would be 3 feet 3 inches. The overhang enters the line of the safety island about 6 feet north of the island. The maximum overhang of the right rear end is 4 feet 9 inches, which occurs when the rear end is about a foot south of the south building line of 59th street. The car involved in the accident was about 49 feet long.

From the east rail of the northbound tracks to the east curbstone is 27 feet 10 inches. The sidewalk on the south side of 59th street is 13 feet 7 inches from the

curb to the building line. There are traffic control "stop and go" lights at the intersection.

After the plaintiff came up near the east rail of the northbound tracks, he turned left and walked directly south in line with the safety island. This was the path usually traveled by people approaching the safety island to board northbound street cars. The automobile traffic was then heavy on Ashland avenue. A northbound Ashland avenue street car was approaching on the track directly behind the car involved in the accident.

The car which struck the plaintiff was standing still as he was walking south toward the safety island. When the plaintiff arrived at a point about 7 feet from the north end of the island the traffic light changed and the first car started up suddenly without warning or signal and started to go around the curve at a very rapid rate of speed. As soon as the plaintiff ascertained that the street car was turning he endeavored to get out of the way of the overhang by turning to his left. The right rear end of the street car struck his left hip, and he was injured. The street car which struck the plaintiff was operated by one man who served as motorman and conductor. There is evidence that at the time of the accident this street car was empty, except that the operator stated he had one passenger. It appears from the testimony of the plaintiff that he had never seen a street car turn left from Ashland avenue into 59th street, and the witnesses seemed to agree that the majority of street cars northbound on Ashland before reaching 59th street continued north across 59th street to various destinations.

The evidence offered by the defendants tends to establish that the car which struck the plaintiff was intended for service on 59th street to be run from Central Park avenue on the west—about 2½ miles west of Ashland—to Blackstone avenue on the east—

about 3½ miles east of Ashland. The street car had been in a barn at Ashland avenue and 69th street, and in order to get into service on 59th street, came north on Ashland to 59th street, continued west to Central Park avenue and then remained in service going east and west on 59th street until the end of its run.

The plaintiff at the time of the trial was 54 years of age, and had lived on Peoria street in Chicago within a block of 59th street for 12 years. He had been employed at 44th street and Ashland avenue for two years previous to the time of the accident, and transferred at 59th street and Ashland avenue every morning in going to work, and also every evening in returning from work. The plaintiff testified that the curved tracks between Ashland and the tracks on 59th street had been there during all of the two years; that he knew they were street car tracks, and must have been used to run street cars on; that he had been living in Chicago for a good many years and that he had seen street cars turn curves running on tracks like this curve on 59th street and Ashland avenue, and that when they turn in that manner the end swings out.

At the close of the plaintiff's case, as well as at the close of all the evidence, the defendants made a motion for a directed verdict, which the court took under advisement. After the verdict was returned for the plaintiff and damages assessed at $10,000, the defendants filed a motion for a judgment notwithstanding the verdict, and in the alternative, a motion for a new trial. This motion for a judgment, as we have already indicated, was allowed.

In considering this motion it is a rule of law that the trial court is not to consider the credibility of the witnesses, nor the weight of the evidence; that his ruling is to be upon the theory that the evidence most favorable to the plaintiff, together with all reasonable inferences, fails to make out a *prima facie* case, and upon that theory the court will be justified in entering a judg-

ment for the defendants notwithstanding the verdict of the jury.

Upon the issues involved in this appeal, plaintiff contends that the issues are limited to the consideration of the following question: "Was there evidence at the trial which, construed most favorably in favor of the plaintiff with all reasonable inferences and intendments to be drawn therefrom, would justify a verdict in his favor?" Or stated conversely: "Was there a total failure by the plaintiff to prove one or more necessary elements of his case?"

While the defendants agree that it has been established beyond question that upon a motion for judgment notwithstanding the verdict the court is not to weigh the evidence, nor take into consideration the credibility of the witnesses, but must consider the evidence in the light most favorable to the plaintiff, they contend that this does not mean only the testimony of the plaintiff and his witnesses may be considered, or that mere extracts from the evidence on certain facts may be considered, but that it means that all of the evidence on all of the essential facts taken strongly in favor of the plaintiff as the record will fairly and reasonably permit, must be taken into consideration. Defendants further contend that if there is no conflict in the evidence concerning a certain fact, then such evidence is the evidence most favorable to the plaintiff on that fact; that many of the undisputed facts are considered in plaintiff's brief as being established facts in this case, although they appear in the evidence offered by defendants; that there is no rule of law which is designed to permit or defeat a recovery in the face of undisputed facts, and cite in support of their contention the case of *Nelson v. Stutz Chicago Factory Branch*, 341 Ill. 387. The court in that case said:

"The defendant in error contends that proof that the plaintiff in error owned the car whose negligent operation caused the accident and the operator was

the plaintiff in error's servant constituted *prima facie* evidence that the car was being used in the plaintiff in error's business and it was liable for the injury. It is further contended that the court cannot say, as a matter of law, that the *prima facie* case thus made has been overcome by testimony that the driver was without authority to drive the car, as it is a question for the jury to determine. The question of law presented to the court upon a motion at the close of all the evidence is whether, when all the evidence is considered, together with all reasonable inferences from it in its most favorable aspect to the party against whom the motion is directed, there is a total failure to prove a necessary element of his case. (*Coal Creek Drainage District v. Sanitary District,* 336 Ill. 11.) This precludes any examination of the weight of the evidence to determine its preponderance, but requires consideration of the evidence itself introduced on the trial and not merely the statements of the opinion of the Appellate Court as to what facts have been proved.

"... The contention of the defendant in error is that it is the province of the jury to weigh the testimony of the witnesses, to determine the credibility and weight of the evidence and give it their belief according to their judgment. In support of this contention she relies upon the case of *Shannon v. Nightingale,* 321 Ill. 168, in which it was said: 'If the condition of the evidence at the close of the plaintiff's case does not justify an instruction for a verdict in favor of the defendant, no evidence which the defendant may introduce will justify such instruction except uncontradicted evidence of an affirmative defense. Evidence contradictory of the plaintiff's will not do it.' This language was too unguarded and should be qualified, as should also the statement that 'the question arising on this motion [to direct the verdict] is whether there is any evidence to sustain the plaintiff's side of the

issue.' The question is whether there is evidence to sustain every element of the plaintiff's case necessary to be proved to sustain the cause of action. The other language quoted should be modified by the substitution for the words 'an affirmative defense' of the words 'facts consistent with every fact which the evidence of the plaintiff tends to prove but showing affirmatively a complete defense.' "

The question in this case is whether there were issues of fact which were properly submitted for consideration of the jury.

The defendants on appeal do not question the amount of plaintiff's damages, but suggest that the questions to be determined are: (1) Was there a total failure to prove defendants' negligence? (2) Was there a total failure to prove plaintiff's exercise of due care and caution for his own safety?

The plaintiff calls our attention to the case of *Feldman v. Chicago Rys. Co.*, 289 Ill. 25, upon the question of whether the plaintiff as a passenger was entitled to the highest degree of care of the defendants. It is clear from the evidence that the plaintiff was a passenger for hire and had a transfer issued by the defendants and was in the act of transferring to an Ashland avenue car traveling north. While the plaintiff cites the *Feldman* case as controlling, still he suggests that the relationship of carrier and passenger is not the sole determinant of defendants' negligence, and even if the plaintiff were merely a pedestrian the negligence of defendants is manifest; that it is not prerequisite to a reversal of the judgment below that the plaintiff was a passenger of defendants.

The authority that a person remains a passenger when in the necessary act of making a transfer did not originate in the case of *Feldman v. Chicago Rys. Co.*, 289 Ill. 25. Thus in *Chicago City Ry. Co. v. Carroll*, 206 Ill. 318, the court said: "It was sufficient that

the undisputed evidence showed, or tended to show, that appellee did receive a transfer, and in consequence of that, and by virtue of it, was a passenger on both lines of appellant while making a continuous journey to his destination.''

One of the cases cited by the defendants upon this exact question is *Griswold v. Chicago Railways Co.*, 339 Ill. 94, wherein the court said:

''It is contended by defendants that plaintiff was not a passenger at the time of her injury, as she intended to do a little shopping at a fruit store near the northwest corner of Seventy-ninth and Halsted streets before using her transfer on her journey south. She had a transfer to be used going south, and the obligation of defendants to use due care for their passengers did not end the moment plaintiff stepped from the car. It was defendants' duty to furnish a safe place for passengers to alight and to exercise proper care for their safety immediately thereafter. (*Chicago Terminal Transfer Railroad Co. v. Schmelling*, 197 Ill. 619; *Pennsylvania Co. v. McCaffrey*, 173 id. 169.) It should be remembered that when plaintiff alighted from the car on the west side there was a stream of automobile traffic between the safety zone near which she alighted and the west curb of Halsted street. It is argued that she might by stepping forward have avoided the maximum swing of the car outward in making the circle into Seventy-ninth street. That would be true provided it appeared she would not have moved into the line of the automobile traffic. All this was a question of fact for the jury. While the facts were different in *Kelly v. Chicago City Railway Co.*, 283 Ill. 640, from this case, in principle the rule of liability in such cases as this is stated.''

The evidence established that the plaintiff was to become a passenger on the Ashland avenue car for the purpose of a continuous journey. It was necessary

that the defendants furnish a safe place for passengers either to board or alight from the street car. The plaintiff was in the act of making a transfer when he started to walk toward the safety island on the east side of the Ashland avenue east tracks, and while he was in the act of walking south on Ashland avenue to reach the safety island, a street car of the defendants standing at that point, started to move and in moving turned the corner, and in doing so the overswing of the rear of the car struck the plaintiff and he was injured.

The point is made that plaintiff could see the car, and that he certainly had knowledge that the car in making the turn would swing outward and thus come in contact with passengers trying to reach the safety island, unless they acted to prevent such contact.

These were all questions of fact for the jury, that is, whether the plaintiff was at the place indicated in this opinion; whether he was too close to the overhang when the car began to turn on 59th street, and the overhang struck him, and whether he exercised due care for his own safety at the time and under all the circumstances.

The cases in which this question is considered all seem to agree that whether a person is a passenger or about to become a passenger for the purpose of continuing his journey, he is entitled to a safe place from which to board the car. In the instant case the safety island in question was certainly there for the use of pedestrians, as well as for passengers making a transfer, and they had the right to assume, unless warned, that cars in turning at the point indicated would not by the overhang of the car strike and injure them.

We believe the court in the instant case was fully justified in submitting the evidence to the jury, but erred in entering judgment for the defendants notwithstanding the verdict of the jury for the plaintiff for $10,000.

For the reasons stated we are of the opinion that the court erred in entering judgment notwithstanding the verdict of the jury, the judgment is reversed and judgment entered in this court on the verdict of the jury in the sum of $10,000 for the plaintiff.

*Judgment reversed and judgment here for the plaintiff for $10,000.*

DENIS E. SULLIVAN and HALL, JJ., concur.